THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN A. KRANKEL, Defendant-Appellant.

Third District    No. 81-478

Opinion filed April 16, 1982.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

James R. May, State's Attorney, of Princeton (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, John A. Krankel, was charged by information with the offenses of burglary and theft. Following a jury trial, Krankel was convicted of both offenses and subsequently sentenced to concurrent terms of five years imprisonment. Krankel's sole issue on appeal is that the trial court erred in permitting Krankel's former wife to testify to communications between her and Krankel during their marriage. Krankel claims that such testimony is barred by the Illinois marital privilege statute.

This issue was presented to the trial court initially as a pretrial motion *in limine* when Krankel became aware that the State intended to call the former Mrs. Krankel as a witness. The trial court denied Krankel's motion because the evidence indicated that the crime charged was committed in concert with the former wife and this waived the marital privilege.

Krankel's case proceeded to a jury trial. Krankel's former wife, Kelly Carr, testified that at Krankel's insistence, she and Krankel drove to her grandmother's house. She testified that Krankel had previously discussed taking the grandmother's silverware. Once there, Krankel opened the front door lock with a plastic credit card. Both she and Krankel entered her grandmother's house. Her grandmother was not at home and had not given them permission to enter. Kelly Carr further testified that she then left the house but reentered at Krankel's command. She remained in the dining room and eventually went back outside and sat in the car with her two small children. Krankel emerged from the house upon discovery of the silverware and queried about a device to transport it from the house. Kelly Carr advised him that there were towels in the kitchen. Krankel then returned with the silverware wrapped in a towel. They drove to Peoria, located a pawn shop and sold the silverware.

The former Mrs. Krankel finished her testimony by saying that in her first meeting with police she had denied all involvement but later admitted her participation claiming that her participation in the crime was against her will.

The second witness for the State was Charles Bailey, the pawn shop owner. He testified that the former Mrs. Krankel, now Kelly Carr, telephoned him for an appointment to sell a 12-piece set of silverware. Bailey testified that the Krankels arrived at his home with John Krankel carrying the silverware and the former Mrs. Krankel carrying a baby. Bailey offered them $1,478.90 for the silverware. According to Bailey, Krankel told his wife that the decision was hers because he did not want to cause trouble with her family for selling their silver. The money was then given to the former Mrs. Krankel. Bailey's business practice is to require identification of the signatory of the sale receipt. Krankel produced his identification and signed the receipt as the former Mrs. Krankel fumbled unsuccessfully in her purse for her identification.

The final witness for the State was Larry Hoyd, the police officer who had investigated the incident. He testified that no signs of forced entry were evident at the grandmother's house and that no fingerprints had been found. The State thereafter rested its case, and defendant's motion for directed verdict was denied.

Krankel then assumed the stand, the only witness in his defense. Krankel denied accompanying his wife to her grandmother's house on the day in question or taking the silverware. Krankel testified that on that day he worked. When he returned home at noon for lunch he found his wife, Kelly, sitting at the table with a set of silverware. Upon his inquiry, Kelly told him that the silverware was a gift from her grandmother. Kelly then asked to use his car to sell the silverware. Since Krankel did not allow her to drive his car, he drove her. Krankel testified they took the silverware to the home of Charles Bailey, a buyer of gold and silver. Krankel testified the decision to sell the silverware rested solely with his wife since he wanted no more trouble with her family for selling a gift. Kelly accepted the price quoted by Bailey and, while holding their baby, fumbled in her purse for identification as required by Bailey. To expedite the transaction, Krankel offered his identification and signed the receipt.

According to Krankel's testimony, his father-in-law accused him of stealing the grandmother's silverware. Kelly told him not to worry about it. Krankel then told Kelly that he was leaving because he was not going to be charged with something he did not do. Krankel felt the police would doubt his side of the story because of his prior criminal convictions. He later turned himself in when he learned that the police were looking for him.

After Krankel's testimony, the defense rested. The jury deliberated approximately 5½ hours to reach their verdict of guilty on all counts.

It is clear from the record that Kelly Carr, Krankel's wife at the time of the incident, testified about activities and conversations beween herself and Krankel during their marriage. Before the trial commenced, Krankel

sought to have such testimony barred pursuant to section 6 of division XIII of the Criminal Code of 1874 (Ill. Rev. Stat. 1979, ch. 38, par. 155—1), which prohibits testimony by one spouse concerning any communication made by the other. The State opposed Krankel's motion on two grounds: (1) Kelly Carr would testify as to conduct of Krankel and conduct is not "communication" within the provisions of the statute; (2) the marital privilege statute does not extend to communications between spouses when the spouses are jointly involved in criminal activity.

The trial court found that the marital privilege is waived where there is evidence indicating a crime was committed in concert by the husband and wife. Accordingly, the trial court permitted the testimony of Kelly Carr as to both conduct of Krankel and conversations between herself and Krankel. We do not believe that to be the law in Illinois.

Under the Illinois marital privilege statute (Ill. Rev. Stat. 1979, ch. 38, par. 155—1), husband and wife may testify for or against each other in all criminal cases provided that:

> "[N]either may testify as to any *communication* or admission made by either of them to the other or as to any conversation between them during marriage, except in cases where either is charged with an offense against the person or property of the other, or in case of spouse abandonment, or where the interests of their child or children are directly involved, or as to matters in which either has acted as agent of the other." (Emphasis added.)

The statute is clear on its face: a spouse may not testify as to intraspousal communications during marriage. Of the four exceptions provided, none include joint criminal activity, the exception announced by the trial court. While other States have held that the marital privilege does not extend to communications between spouses while engaged in a joint criminal enterprise, the Illinois statute does not so provide. A spouse may not testify in Illinois about communications with the other spouse during marriage even though they were engaged in a joint criminal enterprise.

The statute is equally clear as to what testimony is barred by the marital privilege: communications made by either to the other during marriage. We believe it established that communications protected by the marital privilege are required to be confidential and made in reliance upon the intimacy of the marital relationship. Thus, conversations in the presence of third persons are not privileged. *People v. Borchelt* (1977), 46 Ill. App. 3d 286.

Implicit in the term "communication" is speech. Certain acts may constitute a communication to the other spouse. Such acts might include a wave of a hand or a nod of the head. However, the mere description by one spouse of general, noncommunicative conduct is not protected by the marital privilege statute. (*People v. Rettig* (1980), 88 Ill. App. 3d 888;

*People v. Simpson* (1976), 39 Ill. App. 3d 661.) Thus, the testimony of Kelly Carr as to Krankel's conduct was permissible testimony and not protected by the privilege. However, her testimony as to their private conversations was protected by marital privilege, and it was error for the jury to have considered it. As her testimony was a melding of permissible and impermissible evidence, we must remand for a new trial.

For the reasons herein stated, the judgment of the Bureau County circuit court is reversed and the cause remanded for a new trial in conformance with this opinion.

Reversed and remanded.

ALLOY and SCOTT, JJ., concur.