**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Joel WITCHEY, Defendant and Appellee.**

**No. 15071.**

Supreme Court of South Dakota.

Considered on Briefs March 18, 1986.

Decided June 11, 1986.

Rehearing Denied July 18, 1986.

**894**

Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

George J. Rice, Aberdeen, for defendant and appellee.

FOSHEIM, Chief Justice.

The trial court granted Defendant Joel Witchey's (Defendant) pretrial motion to suppress certain voluntary testimony by Defendant's former wife (wife). We granted an appeal from that intermediate order and now reverse.

In early January of 1985, Defendant was charged with rape in violation of SDCL § 22–22–1. State alleges Defendant forced a young woman to perform oral sex with him after he followed her into an alley near her home as she returned from work in the late hours of October 6 or the early morning hours of October 7, 1979. The evidence will show that Defendant's wife accompanied him in the car when they followed the victim from a bar to her babysitters and on to her home. The wife, following Defendant's instructions, waited in the driver's seat of the car with the motor running while Defendant pursued the victim into an alley on foot. Invoking the confidential marital communication privilege, Defendant seeks suppression of any conversation [1] between Defendant and his wife regarding the incident, especially that which took place upon his return to the car. State counters that the conversation in the car falls under an express exception to the marital communication privilege [2] since wife was a participant in the crime.

---

1. Most particularly, State seeks admittance of Defendant's statement to his wife that all he got was "a blow job." The couple's conversation prior to and after the incident would also indicate Defendant's plan, his wife's knowledge of and participation in the alleged crime, and their establishment of an alibi.

2. The communications privilege protects from disclosure any communication made in confidence by one spouse to another during the marriage. *See Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed.

617 (1934). The testimonial privilege more fundamentally protects existing marriages by permitting a person to refuse to testify against his or her spouse. The two privileges are separate and distinct. *Trammel v. United States,* 445 U.S. 40, 44–45 n. 5, 100 S.Ct. 906, 909 n. 5, 63 L.Ed.2d 186 (1980). The doctrine of spousal incompetency ("testimonial privilege") was repealed by the South Dakota legislature in 1979. *State v. Dikstaal,* 320 N.W.2d 164, 165 (S.D.1982). Under present law only a confidential marital communication may be privileged. *Id.* at 165–66; *see* SDCL §§ 19–13–13, & –14.

The marital communication privilege in South Dakota is governed by SDCL § 19–13–13. This statute provides:

An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse.

A defendant or his spouse may claim this privilege. SDCL § 19–13–14. "A communication is confidential if it is made privately by any person to his or her spouse during their marriage and is not intended for disclosure to any other person." SDCL § 19–13–12.

■ State urges that a well recognized joint-participant exception to the marital communication privilege be adopted in South Dakota. We agree.

A growing number of state and federal courts have refused to classify conversations such as Defendant's and his wife's as a privileged spousal communication. *See, e.g., United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir.1985); *United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir.1984); *United States v. Ammar*, 714 F.2d 238, 258 (3rd Cir.1983); *United States v. Petty*, 602 F.Supp. 996, 998 (D.Wyo.1984); *State v. Smith*, 384 A.2d 687, 694 (Me.1978); *see also United States v. Archer*, 733 F.2d 354 (5th Cir.1984); *United States v. Mendoza*, 574 F.2d 1373 (5th Cir.1978); *Gill v. Commonwealth*, 374 S.W.2d 848, 851 (Ky.1964); *contra Johnson v. State*, 451 So.2d 1024 (Fla.App.1984).

■ The exception has been variously expressed. The primary focus, however, is on the nature and purpose of the communication itself. To be privileged the communication must arise from the privacy of marriage, not the joint commission of a crime. *Neal*, 743 F.2d at 1446. Most simply stated, the communication is not protected if it is one criminal, or potential criminal, talking to another. *Sims*, 755 F.2d at 1243. Only communications based on or induced by the marital status alone are protected. *Gill*, 374 S.W.2d at 850; *Smith*, 384 A.2d at 693.

The joint-participant exception has been created in light of the need to narrowly interpret privileges since privileges "are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Just as the rule is narrowly interpreted, so must the exception be applied sparingly. All marital communications [3] are presumed confidential. *Blau v. United States*, 340 U.S. 332, 333, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951); *Wolfle v. United States*, 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934); *Smith*, 384 A.2d at 691. With the introduction of evidence of private communications between spouses goes the burden of showing that either the nature of the communication or the circumstances under which it occurred render the communication not privileged. *Id.; see also State v. McMorrow*, 314 N.W.2d 287, 289 (N.D. 1982). Under the joint-participant exception, the testifying spouse must be more than a simple receptor of a statement by the defendant-spouse that he committed a crime. *Neal*, 743 F.2d at 1446. Active participation in, or furtherance of, patently criminal activity by the witness-spouse must be shown. *Smith*, 384 A.2d at 693; *Sims*, 755 F.2d 1243.

Public policies which lead to the creation of the privilege are not forsaken by recognition of this exception. Rather, when the witness-spouse and defendant-spouse are engaged in joint criminal activity, the public's interest in discovering the truth about criminal activity outweighs the public's interest in protecting the privacy of such a communication. *Trammel v. United States*, 445 U.S. 40, 51–53, 100 S.Ct. 906, 912–914, 63 L.Ed.2d 186 (1980); *Sims*, 755 F.2d at 1243.

Our State Legislature has created specific exceptions to the interspousal privilege.

---

**3.** Some "acts" may be protected marital communications. *See United States v. Smith*, 533 F.2d 1077, 1079 (9th Cir.1976).

SDCL § 19–13–15.[4] However, that statute recognizes that a valid interspousal privilege may exist in the situations enumerated but abrogates its application in specified situations. *Id.* In contrast, the exception we recognize here focuses on the definition of a marital communication and finds that a defendant may not prevent a spouse's voluntary testimony[5] about a communication during joint participation in a crime because that communication does not fall within the definition of SDCL § 19–13–12.

Finally, we note that our legislature has mandated that our state's rules of evidence shall be construed to promote "growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." SDCL § 19–9–2. The intent of our marital communication privilege is preserved but we will no longer unduly burden legitimate law enforcement needs under circumstances such as these. *Sims,* 755 F.2d at 1243.

We reverse and remand.

MORGAN and HENDERSON, JJ., concur.

WUEST and SABERS, JJ., dissent.

WUEST, Justice (dissenting).

I dissent.

The majority rely mostly upon federal cases to add another exception to the confidential communications between an accused and spouse. SDCL 19–13–13. The legislature provided exceptions in SDCL 19–13–15. Any additional exceptions, however desirable, should be provided by the legislature.

SABERS, Justice (dissenting).

I dissent.

SDCL 19–13–12 provides: "A communication is confidential if it is made privately by any person to his or her spouse during their marriage and is not intended for disclosure to any other person."

The communication in question is confidential because it was made privately by the accused to his spouse during their marriage and was not intended for disclosure to any other person.

SDCL 19–13–13 provides: "An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse." This statute applies in this case because Witchey is an accused in a criminal proceeding and he has a privilege to prevent his former spouse from testifying as to any confidential communication made between them during their marriage.

SDCL 19–13–14 provides: "The privilege described in § 19–13–13 may be claimed by the accused or by the spouse on behalf of the accused. The authority of the spouse to do so is presumed."

Therefore, the privilege is for the benefit of the accused as opposed to being for the benefit of the spouse of the accused. It follows that the wife of the accused cannot waive the privilege by voluntarily testifying against the accused against his will.

SDCL 19–13–15 provides: "There is no privilege under § 19–13–13 in a proceeding in which one spouse is charged with a crime against the person or property of

(1) the other,

(2) a child of either,

(3) a person residing in the household of either, or

---

**4.** SDCL § 19–13–15 provides:

There is no privilege under § 19–13–13 in a proceeding in which one spouse is charged with a crime against the person or property of
(1) the other,
(2) a child of either,
(3) a person residing in the household of either, or
(4) a third person committed in the course of committing a crime against any of them.

**5.** This decision is limited to voluntary testimony by a witness-spouse. Defendant and wife were divorced prior to trial. However, the applicability or non-applicability of the marital communication privilege to the testimony of a criminal defendant's *former* spouse was not raised on appeal. We therefore do not reach this issue. *E.g. Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D.1981); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D.1976).

(4) a third person committed in the course of committing a crime against any of them."

None of these exceptions apply to this case, and there are *no other* statutory exceptions to the interspousal privilege.

The question before us is whether this court should adopt the joint participant exception to the marital communication privilege set forth in SDCL 19–13–13, without any statutory authority to do so. The majority opinion says yes. I say we should not.

The purpose of the marital communication privilege rule is many: the protection of the marital relationship; to protect marital privacy; and to insure the ability of one spouse to communicate privately with the other. Obviously, we want spouses to communicate freely and honestly with each other without fear of public disclosure of the communication, just as we want people to communicate honestly with their lawyers, physicians, and clergymen as spiritual advisors. It can even be argued that the rule is a logical extension to the constitutional prohibition against self-incrimination.

The United States Supreme Court recognized the confidential marital communication privilege in *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934), and in *Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951). In *Wolfle,* the Court stated:

> The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.

*Id.* 291 U.S. at 14, 54 S.Ct. at 280.

As noted by the majority, the confidential marital communications privilege and the doctrine of spousal incompetency ("testimonial privilege") are two separate and distinct privileges. In *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), the Supreme Court enunciated the testimonial privilege as a rule that bars the testimony of one spouse against .the other unless both consent. *Id.* 358 U.S. at 78, 79 S.Ct. at 138–139. Although *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), modified the Hawkins rule by holding that the testimonial privilege vests in the witness spouse alone, who may be neither compelled to testify nor foreclosed from testifying; the Court stated that the confidential marital communications privilege was not at issue in *Trammel,* and thus left undisturbed the rulings in *Wolfle* and *Blau, supra. Trammel,* 445 U.S. at 45 n. 5, 100 S.Ct. at 909 n. 5. The Court stated in pertinent part:

> It is essential to remember that the Hawkins privilege is not needed to protect information privately disclosed between husband and wife in the confidence of the marital relationship—once described by this Court as 'the best solace of human existence.' *Stein v. Bowman,* 13 Pet [209], at 223 [38 U.S. 209], 10 L.Ed. 129. Those confidences are privileged under the independent rule protecting confidential marital communications. [*Blau, supra* ] The Hawkins privilege is invoked, not to exclude private marital communications, but rather to exclude evidence of criminal acts and of communications made in the presence of third parties.

*Id.* 445 U.S. at 51, 100 S.Ct. at 913.

The confidential marital communications privilege is a good rule, it has been with us for 109 years. The source is in statutory form, CCivP 1877, § 446, subdiv 1. I submit that the rule has served the people of this state well since 1877.

The cases cited in the majority opinion indicate that the seventh circuit was the first circuit to expressly recognize the joint participant exception. *United States v. Sims,* 755 F.2d 1239, 1241 (6th Cir.1985). In 1974, *United States v. Van Drunen,* 501 F.2d 1393, 1396–97 (7th Cir.) *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974), set forth two rationales for holding that the marital privilege against adverse spousal testimony does not apply if the witness spouse is a victim or a

participant. *Van Drunen* states, "that the goals of protecting marital privacy and of encouraging frank marital communications do not justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or co-conspirator he is creating another potential witness. *Id.* 501 F.2d at 1396. This rationale has a superficial appeal to it, especially in light of the offensive activities allegedly engaged in by this accused. In fact, Witchey's alleged activities are in and of themselves destructive, not supportive, of the marital relationship. However, the rule is supported by more than just the marital relationship. If only the marital relationship were at stake the "witness-spouse" could waive the privilege herself by "voluntary" testimony. The purpose and effect of the rule is to prevent the State from basing a conviction upon the confidential communication of a spouse against the will of the accused.

It is interesting to note the factual circumstances of *Van Drunen, supra.* In that case, the defendant/husband was charged with transporting an illegal alien from Brownsville, Texas to Chicago Heights, Illinois in October of 1971. The alien became defendant's wife one month after his indictment in June, 1973. After creating the joint participant exception, the court concluded that the wife's testimony concerned matters which took place prior to their marriage. Therefore, the confidential communication which defendant sought to suppress fell outside the scope of the privilege and afforded them no protection from the outset. *Id.* 501 F.2d at 1397.

Here, it is undisputed that the Witcheys were husband and wife when the accused made the alleged statement. That they were divorced at the time of trial is of no consequence. The following cases have held or recognized that the privilege protecting confidential marital communications under Rule 501 of the Federal Rules of Evidence, survives termination of the marriage. *United States v. Lilley,* 581 F.2d 182, 189 (CA 8 N.D.1978) ("The confidential communication privilege continues even after the parties are no longer married, so

long as a confidential communication was made during the marriage."); *United States v. Lustig,* 555 F.2d 737, 747 (CA 9 Alaska), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1977) ("... [the confidential marital communications] privilege survives the termination of the marriage."); *United States v. Pensinger,* 549 F.2d 1150, 1152 (CA 8 Iowa 1977) ("[C]onfidential communications between husband and wife during the course of marriage are privileged even after the marriage is ended by divorce ..."). *See also: Pereira v. United States,* 347 U.S. 1, 7, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954) ("Petitioners rely on the proposition that while divorce removes the bar of incompetency [testimonial privilege], it does not terminate the privilege for confidential marital communications. [citations omitted] This is a correct statement of the rule ..."). *See generally:* 46 A.L.R.Fed. 735 (1980).

The majority opinion's statement in footnote 5 that "this decision is limited to voluntary testimony by a witness-spouse", is an insufficient basis to abrogate the privilege. To relate the many circumstances in which future over-zealous prosecutors, frustrated by the possibility of "not getting a conviction," might compel one's spouse to testify against the other are too numerous to consider. There are many forms of compulsion which can be used to compel "voluntary" testimony. All of this "voluntary" testimony would then be admissible under the exception to the rule being created by the majority opinion today. If the accused did all of the things the State claims, the State should be able to obtain a conviction on one of them without the testimony of the wife of the accused.

The Second Circuit Court of Appeals held that the testimonial privilege was not subject to the joint participant exception in *In Re Grand Jury Subpoena United States,* 755 F.2d 1022, 1025 (2d Cir.1985). In this case, the wife was held in contempt for failure to answer grand jury questions pertaining to her husband's alleged conspiracy to transmit national defense secrets to a foreign government. It was also alleged

that she had participated with her husband in these activities, however, the Government made no criminal charge against her.

In rejecting the exception for joint participation in criminal activities, the court was unpersuaded by the Government's reliance on the well-recognized exception to the attorney-client privilege for communications made to an attorney for advancing criminal ends. *Id.* at 1027. The court stated:

> The attorney-client privilege, valuable as it is, is hardly of the same social importance as that of husband and wife. Here, as said in *Griswold v. Connecticut,* "We deal with a right of privacy older than the Bill of Rights ... Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects."

*In Re Grand Jury,* 755 F.2d at 1027 quoting *Griswold,* 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965).

The law of the State of South Dakota provides that the State cannot base a conviction on the confidential communication of the spouse against the will of the accused. As stated above, it is a good law. It has been with us for over 100 years, and it has served the people of the State of South Dakota well. The reasons for the rule still exist and most of them apply here. We should enforce the rule and not "create an exception to it." Accordingly, we should affirm the trial court and require the State to obtain a conviction without using the testimony of the accused's wife.