STATE of South Dakota, Plaintiff and Appellee,

v.

Robert D. HART, Defendant and Appellant.

No. 15223.

Supreme Court of South Dakota.

Considered on Briefs May 21, 1986.

Decided July 24, 1986.

Janine Kern, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Randal E. Connelly, Rapid City, for defendant and appellant.

HENDERSON, Justice.

Appellant waived a jury trial and entered into a Stipulation to Facts with the State; he agreed that his guilt or innocence was to be determined by this stipulation. He was found guilty of possessing a controlled substance under SDCL 22–42–5 by the trial court and sentenced to one year in the State Penitentiary. We affirm, deeming there is but one critical issue before us.

This entire appeal centers around the propriety of the trial court's denial of a Motion to Quash Search Warrant and Suppress Evidence. Appellant's contention is that the Search Warrant was invalid because it was based, in substantial part, upon the disclosure of confidential marital communications. SDCL 19–13–13, SDCL 19–9–14(5). *See also, Muetze v. State,* 73 Wis.2d 117, 243 N.W.2d 393 (1976). A question thus arises as to the propriety of an Affidavit for Search Warrant which is based upon hearsay marital communications revealed to the non-spouse affiant.

In the early morning hours of June 1, 1984, federal and state authorities served a Search Warrant based upon an affidavit, set forth in extenso immediately following, which triggered a seizing of items of drug paraphernalia and small tracings of cocaine. This Affidavit for Search Warrant stated, inter alia:

> The search should be authorized to be conducted at any time of the day or night due to reliable information, as more fully set out below, that Robert D. Hart could leave at any moment with the cocaine for his points of distribution.

> And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: John Tyndall, drug agent with the State of South Dakota, Drug Enforcement Unit, informed the undersigned on May 31, 1984, that on that date he conducted an interview with Susan Lee Hart. She informed Tyndall that her husband, Robert D. Hart, had been in possession of between one to four pounds of cocaine for several months. From conversations with Hart she knew that Hart was getting pressure from his source to distribute the cocaine to facilitate payment of the source for the cocaine. On the morning of May 31, 1984 Susan Lee Hart saw Hart with the cocaine at their residence at 1823 Cruz Dr., Rapid City, S.D. She further told Tyndall that Hart could leave for Montana at any moment to distribute the cocaine. Susan Hart stated that Hart had originally received approximately two kilos of cocaine, but has personally used some quantity of the cocaine. She stated that Hart has kept the cocaine at their residence since receiving

it. She observed Hart using some of the cocaine on the morning of May 31, 1984.

■ Concerning hearsay marital communications revealed to the non-spouse affiant, we initially note that the rules concerning hearsay are not applicable in search warrant proceedings, *see* SDCL 19-9-14(5) and SDCL 23A-35-4; and that an Affidavit for Search Warrant "may be based on hearsay and need not reflect the direct personal observation of the affiant." *State v. Kietzke*, 85 S.D. 502, 510, 186 N.W.2d 551, 555 (1971). *See also*, Annot. 10 A.L.R.3d 359, §§ 3 and 4 (1966). We determine, however, that the resolution of the precise issue presented herein is best left for another day, because even if we assume it to require a negative resolution, if we excise the portions of this particular Affidavit for Search Warrant which relate hearsay marital communications revealed to the affiant, probable cause for the issuance of the Search Warrant still exists. Thus, the Search Warrant was validly issued based thereon.[1]

■ We develop our reasoning further. The privilege embodied in our statutory scheme only embraces marital "communications." Thus, the marital communications privilege "does not extend to all *observations of the acts* of one spouse by the other." *State v. Newman*, 235 Kan. 29, 43, 680 P.2d 257, 266 (1984) (emphasis supplied). Instead, the privilege is limited to utterances or expressions intended to convey a message, *United States v. Smith*, 533 F.2d 1077, 1079 (8th Cir.1976); and to spoken or written statements or nonverbal signs or gestures which seek to transmit information. *Newman*, 235 Kan. at 42, 680 P.2d at 266. *See also, Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435, 443 (1954); *State v. Drury*, 110 Ariz. 447, 453–54, 520 P.2d 495, 501–02 (1974); *Moore v. State*, 270 Ark. 592, 595–

96, 605 S.W.2d 445, 447–48 (1980); *People v. Dorsey*, 46 Cal.App.3d 706, 717, 120 Cal. Rptr. 508, 515 (1975); *Kerlin v. State*, 352 So.2d 45, 48–52 (Fla.1977); *State v. Fowler*, 101 Idaho 546, 550, 617 P.2d 850, 854 (1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981); *People v. Krankel*, 105 Ill.App.3d 988, 990, 61 Ill. Dec. 565, 567, 434 N.E.2d 1162, 1164 (1982); *State v. Houchin*, 149 Mont. 503, 508, 428 P.2d 971, 973 (1967); *Constancio v. State*, 98 Nev. 22, 25, 639 P.2d 547, 549 (1982); *Coleman v. State*, 668 P.2d 1126, 1134 (Okla.Crim.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984); and *State v. Witchey*, 388 N.W.2d 893, 895 n. 3 (S.D.1986), wherein we noted that some acts could be protected marital communications.[2] An individual can therefore generally testify as to their spouse's possessions, *Fowler*, 617 P.2d at 854; *State v. Galloway*, 235 Kan. 70, 92, 680 P.2d 268, 285 (1984); and may specifically testify as to the possession of illegal drugs. *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir.1983).

■ Turning now to the Affidavit for Search Warrant, we note that some of the hearsay statements related therein refer to *conversations* Mrs. Hart had with her husband, while other statements refer to Mrs. Hart's *observations*. These latter statements include Mrs. Hart's observance of her husband's possession of one to four pounds of cocaine; Mrs. Hart's observance of her husband's possession and use of cocaine on May 31, 1984; and Mrs. Hart's observance of her husband's receipt and use of the illegal drug. These observations were of noncommunicative acts and therefore are not protected marital communications. If we excise those statements which relate solely to protected marital communications, and thereby assume a negative resolution of the precise issue herein present-

---

1. It is clear, however, that a spouse cannot testify, either orally or by affidavit, in search warrant proceedings as to any confidential communication between the accused and the spouse. SDCL 19–13–13; SDCL 19–9–14(5). *See also, Osborne v. Commonwealth*, 214 Ky. 84, 282 S.W. 762 (1926).

2. Although we refer to *Witchey*, the factual situation addressed there, and the factual situation herein addressed, are different.

ed, we would necessarily conclude probable cause for the issuance of the Search Warrant exists. Assuming for hypothesis that protected marital communications are excised, the Affidavit for Search Warrant still makes a showing of probable criminal activity, *State v. Smith*, 281 N.W.2d 430, 435 (S.D.1979); it identifies the source of the information and how that information was obtained; nothing therein raises a question regarding Mrs. Hart's credibility and reliability, *State v. Weiker*, 279 N.W.2d 683, 685 (S.D.1979); and the information is not stale.

Accordingly, we affirm the Judgment of the trial court.

FOSHEIM, C.J., and MORGAN and WUEST, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent.

The search warrant was invalid because it was based, in substantial part, upon confidential marital communications.

This case is controlled by SDCL 19–13–13, which provides: "An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential[1] communication between the accused and the spouse."

This statute applies to search warrants because SDCL 19–9–14 provides:

Except as otherwise provided in this section, chapters 19–9 to 19–18, inclusive, apply to all actions and proceedings in the courts of this state. Those chapters *other than those with respect to privileges* do not apply in the following situations:

. . . .

(5) Issuance of warrants for arrest, criminal summonses, and *search warrants.* (emphasis added.)

. . . .

Therefore, the marital communication privilege applies to all actions and proceedings in the courts of this state including the issuance of search warrants. Accordingly, Hart is an accused in a criminal proceeding and he has a privilege to prevent his spouse from testifying as to any confidential communication between him as the accused and his spouse. Since the privilege applies to search warrants, the search warrant itself was invalid because it was based upon privileged confidential communications. SDCL 19–13–13 and 19–9–14(5).

A similar situation was considered in *Muetze v. State*, 73 Wis.2d 117, 243 N.W.2d 393 (1976). A search warrant was issued based upon the confidential marital communications made by the accused to his wife. The wife reported these communications to the police who authorized a search of the defendant's apartment which revealed stolen property. *Id.* 243 N.W.2d at 394–95.

In seeking to suppress this evidence, the defendant argued that the marital communication privilege precludes the repetition by a third person, in a judicial proceeding to obtain a search warrant, of unauthorized private marital communications by a spouse. He further contended that without his wife's disclosures, there was no probable cause to issue the search warrant, that the search was illegal, and that the exclusionary rule prohibited the admission of any of the fruits of the search. *Id.* at 397.

In reversing the defendant's conviction, the court stated:

We hold that unauthorized out-of-court disclosures of private marital communications may not be used in a proceeding before a magistrate to obtain a search warrant. Therefore the warrant in this case was issued without probable cause. The search of the defendant's apartment was not legally authorized and the exclusionary rule set forth in *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6

---

**1.** SDCL 19–13–12 provides: "A communication is confidential if it is made privately by any person to his or her spouse during their marriage and is not intended for disclosure to any other person."

L.Ed.2d 1081, ... must apply to the fruits of that search.

*Id.* at 399.

In *State v. McCreary,* 82 S.D. 111, 142 N.W.2d 240 (1966), we adopted the *Mapp v. Ohio* exclusionary rule which holds evidence obtained by searches and seizures in violation of the United States Constitution inadmissible in a state court. *Id.* 82 S.D. at 125, 142 N.W.2d at 247. We wrote:

> It was not enough that the search was made under color of the authority of a search warrant issued by a magistrate; to be a reasonable search the warrant must have been valid. The warrant was valid only if there was probable cause for its issuance appearing to the magistrate from the supporting affidavit.

82 S.D. at 125, 142 N.W.2d at 247–248. Here, the evidence seized in reliance upon the search warrant should have been suppressed, and held inadmissible under *McCreary* as fruits of an illegal search violative of Hart's rights under the Constitution of the United States and the State of South Dakota. *See:* U.S. Const. Amend., Art. 4, Article VI, § 11, Constitution of South Dakota.

The majority opinion proceeds on the (tentative) basis that the search warrant was valid even if the privileged marital communications were "excised" therefrom, i.e., the basis being the testimony of the "acts" observed rather than the "communications" heard. A fair reading of the affidavit in support of the search warrant dispels that argument. In addition, the communications are so intertwined with the observations of the acts that the "excise" rule is both impractical and impossible to fairly administer. More importantly, the "excise" rule violates both the *letter* and the *spirit* of the marital communication privilege rules which prohibit a search warrant based on confidential communications between husband and wife. SDCL 19–13–13 and 19–9–14(5).

The potential dangers of restricting the protection of the marital communication

privilege is greater to the individual than to the government. As stated in *United States v. Neal,* 532 F.Supp. 942 (D.Colo. 1982):

> Over at least the past decade, the circle of privacy surrounding each of us has drawn smaller with each new governmental incursion and each new technological advance. Courts have sought to preserve inviolable some small island of privacy as a refuge for the human spirit where government may not intrude. Here the question is whether one such sanctuary, protected by the common law for centuries, shall be breached, rendering the secrets told to wives by husbands fair game for government investigators.
>
> The issue is whether in our free society the government may, by making a deal with one's spouse, invade the confidences of marriage to turn those nearest and dearest into informers.[2] Once the marital confidential communication is breached, other like sanctuaries of testimonial privilege cannot prevail against similar invasions, for they are shielded only by similar evidentiary privileges of no less penetrable nature. Thus, by pre-arrangement with a criminal suspect's priest, minister or rabbi, psychiatrist or other physician, or lawyer, the police could obtain much information of great value in combatting crime. The only question is whether the price would be too high.

*Id.* at 946.

This is the second major intrusion by this court upon the marital communication privilege within the last two months. *See: State v. Witchey,* 388 N.W.2d 893 (S.D. 1986), Justices Wuest and Sabers, dissenting.

For what? For whom? Against ourselves! All we really know is that the price is *too high.*

---

**2.** Ample precedent from recent history demonstrates the "efficiency" of such police methods.

*See, e.g.,* Solzhenitsyn, *The Gulag Archipelago,* 40 (Harper and Row 1973).