STATE of South Dakota, Plaintiff
and Appellee,

v.

Donald HAGE, Defendant and Appellant.

No. 18487.

Supreme Court of South Dakota.

Argued Sept. 14, 1994.

Decided May 31, 1995.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Michael Stonefield of Office of Public Defender for Pennington County, Rapid City, for defendant and appellant.

KONENKAMP, Justice.

A jury convicted Donald Hage of Second Degree Arson and four counts of Third Degree Arson and he pleaded guilty to a Part II Information charging him as an Habitual Offender. On appeal, he raises the following issues:

I.  Was the evidence sufficient to sustain a conviction for Third Degree Arson (Count IX)?

II.  Was the evidence sufficient to sustain the convictions generally?

III.  Did the trial court abuse its discretion by not allowing evidence of prior burglaries at one of the arson sites?

IV.  Did the missing element in the Third Degree Arson instruction constitute plain error?

We affirm all convictions.

*FACTS*

In the Fall of 1992 a two-month long succession of pre-dawn arsons occurred in southeast Rapid City, beginning with the Livermore home and ending one block away at the Riss home. Suspicion focused on Hage when witnesses informed authorities that Hage, a neighbor of the Risses and Livermores, was peculiarly conspicuous at the scene of the Riss fire. The day after the fire, November 25, 1992, Hage voluntarily met with investigators at the Rapid City Police Department. He acknowledged being at the scene of the Riss fire, but denied seeing any other fires. Upon further questioning Hage then conceded he had seen the Livermore fire, but gave varying accounts of how he came upon the scene. Still further in the interview he admitted witnessing two other fires, again giving inconsistent versions of events. When confronted with these contradictions, Hage responded, "I know I haven't done them. I know I haven't, I ain't

that, I don't light fires that much where I'd ever do that to hurt anybody or." He was soon charged with nine counts of arson, all having a similar mode of ignition.

At the close of all the evidence in Hage's jury trial the court entered judgment of acquittal on three counts finding insufficient evidence linking Hage to those respective fires. The jury found him guilty on five of the six remaining counts. For his Second Degree Arson and Habitual Offender convictions the court sentenced Hage to eighty-five years in the penitentiary. He received fifteen years in the penitentiary on each of his four convictions for Third Degree Arson, all sentences to run concurrently. Because Hage challenges the sufficiency of the evidence we summarize the facts most favorable to the verdicts. *State v. Sondreal*, 459 N.W.2d 435 (S.D.1990).

**Livermore Fire.**

On October 3, 1992, the Livermore family home was destroyed by fire. Though the house was secured before the Livermores had left town for the weekend, it was common knowledge in the neighborhood that the back door would not always close properly. Firefighters reported that the front door was unlocked when they arrived. At first, fire investigators believed that either a television or a pile of debris under a desk in one of the bedrooms served as the ignition point. On further examination, investigators concluded that the television was a "victim of the fire rather than the source of the fire." Based on all the circumstances the authorities confirmed the fire had an incendiary origin.

A few days after his home had burned, Mr. Livermore was sifting through the remains when Hage, who lived with his parents next-door, began walking around the scene. Livermore did not have a close relationship with Hage, but the two occasionally chatted. Hage mentioned that he awoke to the smell of smoke on the morning of the fire and also remarked cryptically about the Livermores' dog, Bristy, who had perished in the fire, saying, "Boy, you just never know whether he's going to bite and when he isn't." Bristy was hostile to strangers, but according to Livermore, the dog knew Hage and would not respond aggressively to him.

After first telling authorities during the Riss fire investigation that he had not seen any other fires, Hage conceded that he saw the Livermore fire as he walked home from his job at K–Mart around 6:00 a.m. Upon checking, the authorities discovered that he was not employed at K–Mart during this time. At another point during his interview, Hage said he did not become aware of the fire until after he came home from K–Mart and went to bed, but was awakened by the smell of smoke blowing in his open window. The wind that morning was blowing away from his window however.

**Midtown Plaza Fire.**

At 3:48 a.m. on October 7, 1992 firefighters responded to a call at the Midtown Plaza office building where fire was burning through the roof. It took two to three hours to subdue the blaze. The fire had originated in a common area near a stairwell in a dead end hallway on the second floor. Once again investigators deduced arson; the primary ignition site was too burned to determine if any particular materials had been used as kindling, but trash had been used as tinder in attempt to start a fire in two other separate areas of the building. Midtown tenants had a habit of neglecting to lock the main entrance door when leaving the building at night. At his interview Hage admitted to being one block away and watching fire trucks from Hardees Restaurant where he said he had been for over two hours since leaving a nearby bar at closing time around 2:00 a.m. The State elicited testimony that it would take a little over seven minutes to walk from the bar to Hardees. Hage estimated it took him "not even a half hour." Investigators believed that the fire had been burning from one to two hours before 3:48 a.m.

**Dental Office Fire.**

Sometime between 5:30 and 6:30 a.m. on October 24, 1992 someone broke into and set fire to the offices of Dr. Kenneth Benusis, a pediatric dentist.[1] A ceiling tile and air duct

---

1. Hours earlier, a cardboard box and throw rug had been ignited in the lobby of an apartment complex, which was accessible to the general public. No evidence connecting Hage to this

had been altered in an apparent effort to control the flow of the fire, possibly an attempt to cause it to spread to the second floor. Fire investigators found two separate ignition points. One of the two trays in the autoclave which ordinarily held sterilized dental instruments was found empty after the fire. When authorities later searched Hage's bedroom on December 10, 1992, they found three dental instruments in his desk drawer: a single ended, small size dental mirror; a single-ended # 23 "Henry Schein" shepherd's hook explorer; and a "Henry Schein" # 22 double-ended excavator. Dr. Benusis testified that although he could not positively identify the instruments found in Hage's room as definitely his dental tools or indicate that these were specifically missing after the fire, he was emphatic that these three instruments precisely matched the types of dental tools he used. Dental instruments come in different sizes, shapes and brands, but Dr. Benusis preferred to use a "Henry Schein" # 22 double-ended excavator on his child patients. He further explained that there are four available sizes of dental mirrors, but he prefers to use the shortest size: a single-ended mirror, just the same as the one found in Hage's desk. Dr. Benusis also uses a single-ended shepherd's hook "Henry Schein" # 23 explorer. Dentists often use double-ended instruments for adult patients, but as a pediatric dentist, Dr. Benusis favored using single-ended dental tools to minimize possible injury to squirming children.

**Bus Fire.**

When teacher Doug Mulder arrived at Rapid City Christian High School just after 6:00 a.m. on October 30, he saw a man standing near a school bus. The man informed Mulder that there was a fire in the bus and that he had seen some people running away. Mulder had seen no one, nor did he notice any evidence of a fire until he approached the bus. Unable to open the bus doors, the two men gained access through an unlocked window. They opened the windows and doors and put out the fire with water and a fire extinguisher. During their brief encoun-

ter, the man asked Mulder if he thought this fire might be connected to the other recent fires. He also mentioned that he had noticed smoke as he was walking home from work at Perdue Manufacturing. Mulder thanked the man and asked for his name and address. The man replied that his first name was Donald, spelled his last name "H–A–G–G," gave a nonexistent address, and walked away. Arson investigators later determined that the fire had been ignited using scrap as kindling. Scrap building materials from a nearby construction site were found piled under the bus as well. At trial Mulder identified Hage as the man he encountered that morning.

At his interview, Hage admitted that around 6:00 a.m. on October 30, friends had dropped him off at a convenience store near the high school. Hage claimed he was drawn to smoke coming up from behind the church which the wind was blowing toward him as he walked home. Contradictory evidence indicated the wind was blowing in the opposite direction that morning. Furthermore, when Mulder arrived, he did not see any smoke; the bus's windows and doors were shut. Arson investigators testified that the distribution of smoke on the window panes confirmed Mulder's observations: no smoke would be visible to capture Hage's attention. Hage's credibility was further eroded by his stipulation at trial that he did not work for Perdue Manufacturing.

**Riss Fire.**

A smoke alarm awoke Mrs. Riss at 4:30 a.m. on November 24, 1992. She and her husband sought shelter at a neighbor's home. As firefighters battled the blaze which ostensibly originated from trash set on fire along the exterior of the house, Hage, a stranger to the Risses and the neighbor, appeared inside the neighbor's home. Hage approached Mr. Riss, asked how he was doing, and mentioned that he had recently witnessed his neighbor's home burn. He repeated this behavior several times and, according to witnesses, became a general nuisance.

During his interrogation on November 25, Hage stated that he was drawn to the Riss

blaze was submitted. However, the trial court sent this charge to the jury due to its proximity in

time and locale. The jury acquitted Hage on this count.

fire after he saw the smoke and flames from his parents' house on the same street when he arrived there around 4:00 a.m. after an early morning walk. A service station employee confirmed that Hage left the station for home on foot between 3:00 and 3:30 a.m. Investigators concluded that the fire had burned thirty to sixty minutes before it was suppressed at 5:11 a.m. Statements by a news reporter who covered the fire suggested that smoke was not yet visible from Hage's house at the time Hage first claimed to have spotted the fire.

The State presented expert testimony during the trial that the recent series of fires fit a profile known to arson investigators as "not for profit arson." An arsonist with this profile characteristically ignites fires in secluded areas, normally at the same time of day, using a similar method each time. A "not for profit" arsonist will usually return to the scene to watch the fire or survey the damage.

## ANALYSIS

### I. Sufficiency of the Evidence To Sustain Conviction for Third Degree Arson (Count IX).

■ The State charged Hage with Third Degree Arson of the Livermore residence. Hage moved for judgment of acquittal at the conclusion of the State's case contending that the evidence was insufficient as a matter of law to sustain the charge. *State v. Haase*, 446 N.W.2d 62, 65–66 (S.D.1989); *State v. Bonrud*, 393 N.W.2d 785, 789 (S.D.1986). The trial court denied Hage's motion and instructed the jury that Third Degree Arson involves an unoccupied structure. Hage contends that the Livermore home, an occupied structure, could not be the subject of Third Degree Arson and his conviction must therefore be reversed.

Arson occurs with or without occupancy: The statutes for First, Second, and Third Degree Arson all state that the perpetrator must intentionally set fire to or burn or cause to be burned a structure. First Degree Arson additionally requires knowledge that the structure is occupied. SDCL 22–33–1. Second Degree Arson eliminates the knowledge requirement. SDCL 22–33–2. The Third Degree Arson statute employs the term "unoccupied structure" meaning any structure which is not an occupied structure. SDCL 22–1–2; SDCL 22–33–3.[2] The definition of structure includes "any house." SDCL 22–1–2. If the prosecutor elected not to charge and prove that the Livermore home was an occupied structure, then logically the house fell under the all encompassing category of an unoccupied structure. This Court noted in *Goodroad v. Solem,* 406 N.W.2d 141, 146 (S.D.1987):

> We are unaware of why the prosecutor chose the lesser offense for prosecution, whether it was evidentiary problems or purely prosecutorial discretion. In any event, Goodroad is hardly in a position to complain that he was charged and sentenced on the lesser offense.

### II. Sufficiency of Circumstantial Evidence to Sustain Convictions.

■ In reviewing the sufficiency of the evidence, a jury verdict can only be set aside where the evidence and the reasonable inferences to be drawn therefrom fail to sustain a rational theory of guilt. *State v. Burtzlaff,* 493 N.W.2d 1 (S.D.1992); *State v. Lewandowski,* 463 N.W.2d 341 (S.D.1990). In making this evaluation, the Court will accept that evidence, and the most favorable inferences fairly drawn therefrom, which will support the verdict. *State v. Banks,* 387 N.W.2d 19, 27 (S.D.1986) (citing *State v. West,* 344 N.W.2d 502 (S.D.1984)). Our function in reviewing the record, forbids our resolving conflicts in testimony, passing on the credibility

---

2. SDCL 22–33–3 states:

Any person who intentionally and without all of the owners' consent, sets fire to or burns or causes to be burned any unoccupied structure, or any other real or personal property not contained in or containing an occupied structure, of a value in excess of twenty-five dollars is guilty of arson in the third degree. Arson in the third degree is a Class 4 felony.

Although this statute specifically requires the value to exceed twenty-five dollars, we do not label this as an element not included in the greater offense. First and second degree arson concern something far more valuable: the potential for endangering human lives.

of witnesses, or weighing evidence. These functions lie solely within the jury's province as ultimate trier of fact. *Burtzlaff,* 493 N.W.2d at 4; *State v. Svihl,* 490 N.W.2d 269, 274 (S.D.1992); *State v. Huettl,* 379 N.W.2d 298, 302 (S.D.1985).

■ The State's case against Hage was purely circumstantial. Circumstantial evidence is equal to and sometimes more reliable than direct evidence (*State v. Best,* 232 N.W.2d 447 (S.D.1975)), however

> The established rule in this state is that to warrant conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent.... This rule does not mean the evidence must be such as to exclude every possible hypothesis of innocence. Rather it requires only the exclusion of reasonable hypothesis of innocence.

*State v. Esslinger,* 357 N.W.2d 525, 530–31 (S.D.1984) (citations omitted). We conclude from our careful review of the record that the State's evidence was more than sufficient to establish arson on each of the five fires. The question then is whether the jury was presented with facts and circumstances consistent with each other and with Hage's guilt, such as cannot by any reasonable theory be true and Hage be innocent? Hage denied starting any fires and no one testified to seeing him start one. Arson is rarely proven through eyewitness testimony.

> While a conviction may be had, even though there is no evidence that the accused was in a position where he could have ignited the fire, there must be something connecting him in a personal way with the actual burning.

5 Am.Jur.2d *Arson and Related Offenses* § 55 (1962).

■ By his own admission and eyewitness testimony Hage was on or near the scene of four of the arsons. All fires in this series occurred in Rapid City approximately between 2:15 a.m. and 6:30 a.m. within two miles of each other during a two-month period. The fires had been ignited by a similar method: no accelerants were used, each was fueled with whatever was readily available nearby, such as trash. Hage was unemployed and regularly spent the midnight to dawn hours walking alone around Rapid City. Walking was Hage's typical mode of transit and the fires corresponded with the areas where he walked. Hage gave false and contradictory statements to law enforcement about his movements relating to these fires. At the scene of the bus fire he gave a false name and address. More than once he claimed to have happened upon a fire while traveling home from a nonexistent job.

The circumstances surrounding the Livermore and Riss fires definitely tied Hage to these arsons. Hage's possession of pediatric dental tools of the exact type, size and brand Dr. Benusis prefers to use, which could have been taken from one of the trays in his autoclave found empty after the fire, established a tangible link to the dental office arson. Perhaps the most tenuous connection between Hage and a fire was the Midtown Plaza case. But even here the crime fit a clear pattern: trash was used as kindling; fires were started in secluded parts of the building; the building was in the vicinity Hage traveled to go from the bar to Hardees; by an investigator's estimate the fire was started at a time somewhere around 2 to 3 a.m. when by his own admission Hage was walking in the area; and Hage once again was on the scene to witness the blaze.

The jury not only had the right to consider Hage's admissions in connection with all the other circumstances in the case, but it also could regard his false statements as themselves tending to evince guilt. *Wilson v. United States,* 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). *See also Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). We conclude that although the cases against him were wholly circumstantial, viewed cumulatively the evidence was sufficient for the jury to rule out any reasonable hypothesis of innocence and convict Hage on each charge.

### III. Evidence of Prior Burglaries at Dental Office.

■ Dr. Benusis's office had been burglarized approximately one year before his office

was gutted by fire. The unknown intruder took syringes, white powder, and Novocain. Another burglary occurred six months later, but Dr. Benusis was not aware if anything was taken. Arson was not associated with either of these previous burglaries. Hage sought to question Benusis about these events. The trial court refused to allow this testimony citing Rule 403 (SDCL 19–12–3) which provides in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . .

Hage argues that proof of these prior burglaries could have rebutted the State's theory that he obtained the dental tools at the time he allegedly set fire to the dental office; they support his alternative theory on how he may have obtained these instruments. Evidence of other offenses is relevant if it tends to make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1; *State v. Reutter*, 374 N.W.2d 617 (S.D. 1985); *State v. O'Connor*, 172 N.W.2d 724 (S.D.1969). Yet other than the burglaries themselves, no other evidence in the record supports this hypothesis; the jury would have to surmise that Hage had broken in and stolen the dental tools six months or a year earlier. The defense was entitled to pursue its theory of the case, but only with sufficient factual foundation. We see no abuse of discretion in the trial court's denial of this testimony which would serve only to mislead the jury and confuse the issues. *State v. Hanson*, 456 N.W.2d 135, 138 (S.D.1990); *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986).

### IV. Missing Element in Third Degree Arson Instruction.

The trial court failed to instruct on an element of Third Degree Arson: that the burned property's value must exceed twenty-five dollars. SDCL 22–33–3. No one objected to this omission. Failure to object to the jury instruction or propose an alternative instruction waives the issue for appeal. *Burtzlaff*, 493 N.W.2d at 7; *State v. O'Con-*

*nor*, 378 N.W.2d 248, 256 (S.D.1985). When an issue is not properly preserved for appeal we will not address it unless plain error is shown. *State v. Holloway*, 482 N.W.2d 306, 309 (S.D.1992). "[T]he plain error rule applies only in exceptional cases, and then it must be applied cautiously; the rule does not encompass every error which occurs at trial, but only those errors which are both obvious and substantial." *Id.*

Plain error exists if the omission of the twenty-five dollar element substantially impaired Hage's rights, thereby prejudicing him. *State v. Brammer*, 304 N.W.2d 111, 114 (S.D.1981). Prejudicial error is error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it. *State v. Phillips*, 489 N.W.2d 613, 617 (S.D.1992); *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987). Hage must also prove that under the evidence, the jury probably would have returned a different verdict. *State v. Weisenstein*, 367 N.W.2d 201, 206 (S.D.1985).

Hage was convicted of four Third Degree Arsons for setting fire to a school bus, a dentist's office (complete with equipment and located in an office building), the Midtown Plaza office building, and the Livermore home. No one has even implied that these properties might be worth less than the statutory minimum. Granted, the proper course of action would have been to place the element in the instructions; nevertheless, this is not a fatal flaw requiring reversal or a new trial. The burned properties obviously had considerable value. Hage was neither prejudiced by the omission nor do we believe that the jury would have returned a different verdict had the element been properly included. *State v. Fields*, 488 N.W.2d 919 (S.D.1992); *State v. Willis*, 370 N.W.2d 193 (S.D.1985). Thus we find no plain error.

We affirm all convictions.

MILLER, C.J., and AMUNDSON, J., and WUEST, Retired Justice, concur.

SABERS, J., concurs in result.

GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.

SABERS, Justice (concurring in result).

On Issue I, the state should be more careful in selecting language that more appropriately fits the charge, otherwise unnecessary confusion could result and mislead future defendants in similar circumstances.

Interestingly, on Issue III, the trial court excluded evidence of two prior burglaries of the dentist's office. This denial is being affirmed on the basis that the testimony would only serve to mislead the jury and confuse the issues. I concur in result because the defendant should be permitted to offer evidence to support his defense, whatever it is.

On Issue IV, the trial court should have instructed the jury that the value of the burned property had to exceed $25.00. SDCL 22-33-3. However, the evidence clearly did and I concur in result because the evidence was sufficient to sustain all of the convictions.