2003 SD 41

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Ronald Louis TALARICO, Defendant and Appellant.**

**No. 22334.**

Supreme Court of South Dakota.

Argued Jan. 14, 2003.

Decided April 16, 2003.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, for plaintiff and appellee.

Suzanne M. Dardis, Hood, Nies & Dardis, Spearfish, for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] Ronald Talarico (Talarico) appeals his convictions for one count of grand theft, three counts of third degree burglary and one count of first degree petty theft on March 18, 2002.  We affirm.

## FACTS

[¶ 2.] This case arises from charges brought against Talarico in Meade County, South Dakota. He and his companion Judy Lakin (Lakin) embarked on a car trip that took them from California through several states arriving in Sturgis, South Dakota, in August 2001 for the motorcycle rally. Evidence at trial, indicated they had financed their cross-country trip by pawning items acquired from several burglaries and thefts in the course of the trip. Meade County law enforcement first became aware of Talarico and Lakin when called to a domestic dispute disturbance at a Burger King restaurant in Sturgis. When the officers arrived, Talarico sped away in his vehicle hitting an occupied vehicle and after a short pursuit, was apprehended. From this incident he was charged with aggravated assault, simple assault, reckless driving, eluding a police vehicle, and failure to stop his vehicle after an accident.

[¶ 3.] Lakin, when speaking with law enforcement officers, told them about burglaries and thefts she and Talarico had committed in the area. She showed them the sites of three burglaries in Meade County. The officers were able to recover some of the stolen items that had been pawned. As a result of this information, Talarico was charged with three counts of third degree burglary, two counts of grand theft, and one count of petty theft. He requested and was given a court appointed attorney for both indictments. Being unsatisfied with the court appointed attorney, Talarico requested new counsel. The trial court granted his request and another attorney was appointed to represent him. Consistently throughout the pre-trial proceedings, Talarico complained about his representation. Each time he complained, the trial court specifically canvassed Talarico as to the specifics of his complaints. Finding no merit to them, the court refused to substitute counsel a second time.

[¶ 4.] On December 10, 2001, court-appointed counsel went to see Talarico at the Meade County jail. Talarico informed the attorney that he no longer considered him his attorney. A hearing was held on January 7, 2002. A jury trial on the assault charges was to begin two days later. At this hearing Talarico again expressed his discontent with his attorney and requested new counsel. Once more Talarico stated lack of communication, failure to contact witnesses, and the attorney's personal preference not to represent him as reasons to substitute counsel. When the trial court inquired further into Talarico's request for substitute counsel, Talarico went into a tirade causing the judge to order him out of the courtroom. The trial court set a hearing for later that day and directed the deputies to advise Talarico that he would be allowed to come back if he could maintain his temper and avoid another outburst.

[¶ 5.] Talarico appeared at the rescheduled hearing. The court warned Talarico that his disruptive behavior may cause him to be removed from the courtroom. Talarico launched into an invective discourse expressing his dissatisfaction with his attorney and the judicial system in general.[1] Once more the court found that the defendant was not entitled to substitute counsel. Two days later all parties, including Talarico, appeared for the first trial involving the assault charges. Talarico remained throughout the entire first trial, testified on his own behalf and was acquitted of the aggravated assault and simple assault charges and convicted of the remaining misdemeanor charges.

---

1. Appellate counsel was not trial counsel.

[¶ 6.] Talarico's second trial began February 26, 2002. Before voir dire at the pre-trial hearing, Talarico again requested substitute counsel because he claimed his attorney failed to subpoena three witnesses. Talarico threatened to be disruptive, offensive and uncooperative if the court refused his request. He declared that if he did not get new counsel he wanted to go back to his jail cell. When the trial court denied his request, Talarico made good on his threat exhibiting very abusive, disruptive behavior in the courtroom. After a lengthy discourse with Talarico and upon Talarico's request, the trial court sent him back to his cell.

[¶ 7.] The court discussed with the attorneys various options of proceeding in defendant's absence. After considering the morning's events, all prior hearings and appearances of Talarico including his prior jury trial, the court determined that Talarico had voluntarily absented himself and proceeded with the trial. During the trial, the trial judge, on several occasions, sent the deputy to Talarico's cell to ask if he wished to return to court. Each time Talarico responded that he did not. The entire trial was conducted in his absence.

[¶ 8.] The State called eleven witnesses including its main witness—Lakin, Talarico's accomplice. After a two-day trial, the jury found Talarico guilty of one count of grand theft, three counts of third degree burglary and one count of first degree petty theft.

[¶ 9.] Talarico appeals the following issues:

1. **Whether the trial court erred in conducting the trial in the defendant's absence.**

2. **Whether the trial court abused its discretion in denying the defendant's motion for substitute counsel.**

3. **Whether the trial court erred in refusing to allow the defendant to proceed pro se.**

4. **Whether the trial court erred in failing to strike the jury panel due to prejudicial remarks made by a potential juror.**

5. **Whether the trial court properly instructed the jury regarding specific intent.**

6. **Whether the trial court erred in allowing testimony from Judy Lakin, defendant's alleged spouse.**

7. **Whether the trial court erred in denying the defendant's Motion for Judgment of Acquittal.**

8. **Whether counsel was ineffective rising to the point of plain error.**

9. **Whether the defendant is entitled to a new trial based on the cumulative effect of errors.**

## DECISION

1. **Whether the trial court erred in conducting the trial in the defendant's absence.**

[¶ 10.] We review the trial court's decision to proceed with the trial in absence of the defendant de novo. "Because the application of a statute to particular facts involves a question of law, we review the circuit court's conclusions de novo." *State v. Guthrie*, 2001 SD 61, ¶ 61, 627 N.W.2d 401, 424; *Lucero v. VanWie*, 1999 SD 109, ¶ 6, 598 N.W.2d 893, 895.

[¶ 11.] Talarico claims that SDCL 23A–39–1 (Rule 43(a)) prohibits the State from trying him in absentia because he was not present at the beginning of his trial. This is an issue of first impression for this Court. Rule 43(a) requires the presence of a defendant at every stage of his trial with two exceptions.

A defendant shall be present at his arraignment, at the time of his plea, at every stage of his trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by § § 23A–39–2 and 23A–39–3.

23A–39–1 (Rule 43(a)).

[¶ 12.] The first exception is when the defendant is "initially present," but "voluntarily absents himself after the trial has commenced," the second exception is when the defendant's own conduct justifies his exclusion. SDCL 23A–39–2 (Rule 43(b)) provides:

The further progress of a trial to and including the return of a verdict shall not be prevented whenever a defendant who was initially present:

(1) In noncapital cases, voluntarily absents himself after the trial has commenced; or

(2) Engages in conduct which justifies his being excluded from the courtroom.

[¶ 13.] Prior to codification of the Federal Rule 43 [which is equivalent to SDCL 23A–39–2 (Rule 43(a) and (b)) ], the United States Supreme Court in *Diaz v. United States*, determined that a defendant can waive his right to be present during certain portions of a trial. 223 U.S. 442, 454, 32 S.Ct. 250, 253, 56 L.Ed. 500 (1912). In *Diaz*, the defendant, out on bail, absented himself twice during the later stages of his trial in the Philippines. He had sent a note to the court that the trial should proceed without him. *Id.* at 453, 32 S.Ct. 250. He appealed his conviction, in part, on the premise that he could not waive his presence and the court did not have the power to proceed in his absence because the law expressly stated he was entitled to appear at every stage of the proceedings.[2] *Id.* The Court found no infringement of the law and that the defendant could waive his presence during portions of the trial. *Id.* at 459, 32 S.Ct. 250.

[¶ 14.] Talarico relies on a later U.S. Supreme Court case of *Crosby v. United States*, wherein, the Court held that the Federal Rule 43[3] did not permit "the trial *in absentia* of a defendant who absconds prior to trial and is absent at its beginning." 506 U.S. 255, 256, 113 S.Ct. 748, 750, 122 L.Ed.2d 25 (1993). In *Crosby*, the defendant did not appear the day of the scheduled trial and could not be found.

---

2. The Philippine laws, Comp. Stat.1907, contain the following provisions, bearing upon the presence of the accused at the proceedings upon a charge for felony:

'Sec. 3270. In all criminal prosecutions the defendant *shall be entitled* (a) to appear and defend in person and by counsel at every stage of the proceedings. . . .
'Sec. 3271. . . . If the charge is for felony (*delito*), the defendant *must* be personally present at the arraignment; . . .
'Sec. 3280. A plea of guilty can be put in *only* by the defendant himself in open court. . . .
'Sec. 3296. The defendant *must* be personally present at the time of pronouncing judgment, if the conviction is for a felony; . . .

*Diaz*, 223 U.S. at 453, 32 S.Ct. 250.

3. That portion of Rule 43 which the court addressed states:

"(a) PRESENCE REQUIRED. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
"(b) CONTINUED PRESENCE NOT REQUIRED. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
"(1) is voluntarily absent after the trial has commenced. . . ."

*Crosby*, 506 U.S. at 258, 113 S.Ct. 748.

*Id.* The district court postponed the trial several days in an effort to find the defendant and, upon determining that he had absconded, tried him *in absentia. Id* at 257, 113 S.Ct. 748. Approximately six months later the defendant was apprehended in Florida and brought back for sentencing. *Id.* The Supreme Court reversed the lower court based upon its interpretation of Federal Rule 43.

[¶ 15.] The Court determined that "Rule 43 does not allow full trials *in absentia.* The Rule declares explicitly: 'The defendant shall be present ... at every stage of the trial ... *except as otherwise provided* by this rule' " (emphasis added). *Id.* at 258–59, 113 S.Ct. 748. *Crosby* was not present prior to trial and the Court clearly distinguished between the pretrial flight of Crosby and the midtrial absence of Diaz. The Court based the distinction partly on the premise that midtrial flight or absence exhibits a knowing and voluntary waiver of a defendant's right to be present. The Court stated, "Whether or not the right constitutionally may be waived in other circumstances—and we express no opinion here on that subject—the defendant's initial presence serves to assure that any waiver is indeed knowing." *Id.* at 261, 113 S.Ct. 748.

[¶ 16.] Talarico maintains he was escorted from the courtroom before the trial began and was, therefore, not present at the commencement of trial which is required for a valid waiver under the statute. The Rule states that the trial can proceed "whenever a defendant who was initially present ... voluntarily absents himself after the trial has commenced...." Consequently, the threshold question is whether the trial had "commenced" for purposes of SDCL 23A–39–2 (Rule 43(b)).

[¶ 17.] Prior to and during the trial, Talarico was in custody. He was brought into the courtroom for all scheduled proceedings. On the day of trial Talarico was physically present in the courtroom where the trial was to be held, all parties were present, the jurors had reported and were waiting to be brought into the courtroom. Talarico understood that the proceedings against him were underway. The trial judge announced as he started the proceeding, "We're on the record outside the presence of the jury, it's February 26[th], this is the time and place set for a trial in the matter of State of South Dakota versus Ronald Louis Talarico." Talarico immediately began to protest and requested a different attorney. To which the court again replied, "The time and place for the trial is today, we have gone through this before...." Talarico tells the court:

> You know, you can either give me a week's continuance and subpoena my witnesses and I'll represent myself or send me on back to my cell, Judge, because I really don't want to act like an asshole here. What good is it going to do any of you people if I spit in his face in front of the jury? Because that's what I'm going to do, man. So send me back to my cell, have your little kangaroo court and convict me. You know, I mean that's the bottom line here.

After further discussion with Talarico and his attorney concerning Talarico's request for a continuance, the following dialogue transpired:

> THE COURT: Well, Mr. Talarico, the—what you're asking right now, because I'll tell you I'm going to deny your request for substitute counsel, I'm going to deny your request for a continuance, and what you're asking is at this point before the jury is even selected, before they have even come in to have any kind of—you have been through it, I mean, you know—
>
> THE DEFENDANT: Yeah, I know exactly what's going on.

THE COURT: Okay. So before that even starts you're just saying, "Judge, please let me go?"

THE DEFENDANT: Absolutely, if he's representing me, yeah.

THE COURT: Okay. Well, I'll—I mean, I—again, I think the law provides that you can voluntarily absent yourself.

THE DEFENDANT: Okay.

THE COURT: ... But, I'm going to do this: every time we have a break I'm going to send word back through the jail to tell you that we're on a break and re-invite you.

THE DEFENDANT: Okay, well, you might as well save your breath because I'm not going back as long as he's here.

We find that under this set of facts for the purposes of SDCL 23A–39–2 that Talarico was "initially present," and that the trial had commenced.

[¶ 18.] The second question is whether Talarico "voluntarily waived" his presence. Although we have not addressed the issue of waiver as it relates to presence at trial, we have done so as it relates to other procedural and constitutional rights. In *State v. Tuttle*, we held that in order to prove a valid waiver of one's *Miranda* rights the state must show that "(1) the relinquishment of the defendant's rights was totally voluntary and (2) the defendant was fully aware that those rights were being waived and of the consequences of waiving them." 2002 SD 94, ¶ 9, 650 N.W.2d 20, 26. In *State v. Martin,* we stated that, "There are no formal requirements for a valid waiver [of the 180–day rule] ....; '[s]o long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity.' " 493 N.W.2d 223, 226. The Court further remarked that although there were no formal requirements the state still must show that "any waiver was

the product of an informed and voluntary decision." *Id.* The New Mexico Supreme Court in a recent case applied its version of Rule 43 and found that a defendant can waive his right to be present during jury selection. *State v. Padilla,* 132 N.M. 247, 46 P.3d 1247 (2002). In determining the validity of the waiver, the court said a valid waiver "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 1254 (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). "Although no particular litany of questions may be required, there must be a sufficient colloquy to satisfy the trial court's responsibilities; a knowing and voluntary waiver cannot be inferred from a silent record." *Id.; see Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

[¶ 19.] It is clear from the record that Talarico was well versed in the nature of the proceedings and his rights. The record is replete with lengthy discourse from the defendant about his concern with his lawyer, the system, and his right to a fair trial. He was clearly able to articulate his concerns to the trial court and understand his rights. Before Talarico was escorted from the courtroom, the trial court asks again:

THE COURT: [Y]ou have a right to participate in this trial, we want you here, you have a constitutional right to be here, and I said it several times, probably when you have been in here, you have a right to confront and cross-examine witnesses, that means you have a right to be here, you have a right to have a trial, in fact our statutes and our constitution is all designed so that you are here.

THE DEFENDANT: Gees. It's not going to work.

THE COURT: Well.

THE DEFENDANT: It's not going to work.

THE COURT: Okay.

. . .

THE COURT: ... If you choose not to participate in this trial I want to make absolutely certain that you understand that you have a right to be here.

THE DEFENDANT: Yeah.

THE COURT: And that if you choose to go back that you're doing it voluntarily—

THE DEFENDANT: Yes.

[¶ 20.] The trial court determined that the defendant had voluntarily waived his right and returned Talarico to his cell. Despite this determination, the trial court sent the deputy to Talarico's jail cell on three separate occasions to ask if he would like to return to trial to which the defendant responded, he did not. Talarico was not present for any portion of his trial except sentencing.

[¶ 21.] Under the circumstances of this case, the trial court did not err in determining that Talarico had voluntarily waived his right to be present. Talarico had appeared before the trial court numerous times prior to this trial. The trial judge took great care in explaining Talarico's rights including his right to be present at trial. He allowed Talarico to express his dissatisfactions and listened to his complaints. He explained Talarico's options including remaining in the courtroom shackled and restrained. In fact, at the first trial the court had contemplated allowing law enforcement to use a stun belt in the event they needed to subdue him. The court had sufficient interaction with Talarico to know his behavior, his intellect and his demeanor. Talarico was no stranger to court proceedings or his right to be present. He had just completed a jury trial in which he participated a few weeks before. Additionally, the court did a sufficient job of canvassing Talarico the morning of trial to ensure his request to absent himself was knowing and voluntary. Based upon the foregoing facts, we find that the defendant was present at the commencement of trial and that the trial court's determination that Talarico had voluntarily waived his right to be present at trial was not error. We affirm.

## 2. Whether the trial court abused its discretion in denying the defendant's motion for substitute counsel.

[¶ 22.] Talarico claims the trial court erred in denying his motion for substitute counsel. We review the denial of a motion for substitute counsel under an abuse of discretion standard. *State v. Loftus*, 1997 SD 94, ¶ 13, 566 N.W.2d 825, 827.

[¶ 23.] Talarico asserts that due to irreconcilable disputes over defense strategy and a break down in communication, his motion for substitute counsel should have been granted. We have held, "[a]ppointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *State v. Irvine*, 1996 SD 43, ¶ 9, 547 N.W.2d 177, 180. In addition this Court held in *State v. Fender*, " '[W]hen [a] defendant alleges the existence of a dispute leading to a destruction of communication and a breakdown in the attorney-client relationship, the judge is obligated to inquire whether such allegations are true.' " 484 N.W.2d 307, 309 (S.D.1992) (quoting *People v. Bass*, 88 Mich.App. 793, 279 N.W.2d 551, 555 (1979)). Furthermore, this Court in *Fender*, held that a defendant must be given an opportunity to "present his 'good cause' justifying a change in counsel." *Id.*

[¶ 24.] The trial court followed these procedures with Talarico. The trial court held a hearing on November 19, 2001, January 7, 2002, and on February 26, 2002 to discuss Talarico's repeated request for substitute counsel. At each hearing the trial court asked the defendant why he needed substitute counsel. He claimed that he and his attorney had irreconcilable differences about his defense and that they had a break down in communication. At each request, the trial court took note of Talarico's complaints and questioned him in depth to determine their basis. After consideration, the trial court found the defendant's reasons insufficient.

[¶ 25.] A defendant's right to counsel "does not contemplate that an accused may take charge of the case after an attorney has been appointed, or dictate its course, or make counsel's educated judgment the pawn of an unreasonable and obdurate malefactor." *State v. Pieschke*, 262 N.W.2d 40, 46 (S.D.1978). Moreover, any problems with communication were due to Talarico's refusal to cooperate with his attorney. At the January 7, 2002 hearing the trial court asked the defendant, "[A]nd that's your choice not to cooperate, isn't it?" To which the defendant replied, "You bet it is, yeah." A defendant is not entitled to substitute counsel when the break down in communications is caused by the defendant's admitted refusal to cooperate. *Irvine*, 1996 SD 43, ¶ 13, 547 N.W.2d at 181. Additionally, the trial court expressed concern that the defendant would not be satisfied with any counsel. We do not find that the trial court abused its discretion in denying the defendant's motion for substitute counsel.

3. **Whether the trial court erred in refusing to allow the defendant to proceed pro se.**

[¶ 26.] During the pre-trial hearing on the morning of the trial, Talarico stated, "you can either give me a week's continuance and subpoena my witness and I'll represent myself or send me back to my cell." Talarico claims that he unequivocally requested to represent himself.

[¶ 27.] Although a defendant has a constitutional right to represent himself, his request must be clear and unequivocal. *Irvine*, 1996 SD 43, ¶ 18, 547 N.W.2d at 182; *State v. Chamley*, 1997 SD 107, ¶ 35, 568 N.W.2d 607, 618. Talarico gave the court an ultimatum. Either the court grant his continuance, so he could represent himself, or he wished to return to his cell. At this point the trial court denied his request for continuance. Talarico did not ask again to represent himself. In fact, at the same hearing Talarico said "and without my witnesses I don't stand a chance, ... and without proper representation I don't stand a chance, so why should I sit here for you...." In addition, the trial court sent the Deputy Sheriff to clarify this issue of proceeding pro se. Talarico told the Deputy that he did not wish to represent himself, as "he was not qualified, he needs an attorney." "A court must 'indulge in every reasonable presumption against [a defendant's] waiver' of his right to counsel and require the defendant to make a knowing, intelligent, voluntary, and unequivocal request before concluding that he has waived his right to counsel and invoked his right to represent himself." *Irvine*, 1996 SD 43, ¶ 18, 547 N.W.2d at 182 (citing *Hamilton v. Groose*, 28 F.3d 859, 861–62 (8th Cir.1994)). We cannot say that the trial court erred in denying the defendant his right to proceed pro se.

4. **Whether the trial court erred in failing to strike the jury panel due to prejudicial remarks made by a potential juror.**

[¶ 28.] Prior to voir dire the court had a discussion with counsel concerning

the absence of the defendant and the impact it would have on the jury. The court fashioned a jury instruction explaining Talarico's right to be absent at trial which explained that no inference of guilt or innocence was to be drawn from his absence. During voir dire counsel for Talarico discussed the jury instruction with the potential jurors. One potential juror in particular took issue with the defendant's absence. The juror stated that she felt that the defendant should be present and his absence "definitely" implied guilt. The juror was removed for cause. Subsequently, the court commented, "the decision on whether or not Mr. Talarico is here or not is mine." Next, the court reread the instruction concerning the defendant's absence from trial. Defense counsel ultimately passed the panel for cause.

[¶ 29.] Since defense counsel did not object at trial, Talarico seeks to invoke the plain error rule on appeal. Talarico claims that the court committed reversible plain error when it failed to strike the entire jury panel after the allegedly prejudicial remarks by the one juror.

[¶ 30.] This Court has held that it will only invoke the plain error rule in "exceptional circumstances, such as, where a miscarriage of justice has occurred because the defendant is innocent or because the error may seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *State v. Dufault*, 2001 SD 66, ¶ 8, 628 N.W.2d 755, 757 (citations omitted) (internal quotes omitted). The defendant bears the burden of proving prejudicial error. *Id.* A burden he has not met.

[¶ 31.] Talarico claims that it is clear from the voir dire conducted after the juror's comments that the jurors were tainted and failure to dismiss the jury panel was prejudicial. Talarico refers to a potential juror who stated, that he would prefer that the defendant be present as he wanted to watch him "squirm." During further questioning the potential juror stated that "it would be easier if he was here, but I will do my best." This juror did not serve on the jury. Defendant also points to another potential juror who commented about having to accept the fact that the defendant was gone. This Court has held that it is the juror's inability to set aside those preconceptions and render an impartial verdict that requires excusal. *State v. Verhoef*, 2001 SD 58, ¶ 12, 627 N.W.2d 437, 440. Further questioning of the jurors who made the comments indicated they could be impartial and that they had not predetermined the defendant's guilt. We find that the defendant failed to show prejudicial error.

**5. Whether the trial court properly instructed the jury regarding specific intent.**

[¶ 32.] Talarico claims that the trial court erred in not giving a separate specific intent instruction for grand theft and petty theft. The trial court gave one instruction on specific intent. Instruction No. 10 reads as follows:

In the crime of theft, there must exist in the mind of the perpetrator the specific intent to take or exercise control over property of another with intent to deprive the other person of it. If specific intent did not exist, this crime has not been committed.

Furthermore, Instruction No. 16 stated:

An element of the crime of third degree burglary is that the unlawful entering in an unoccupied structure was with the specific intent to commit the crime of theft, that is, with the specific intent of taking or exercising control over the property of another with the intent to deprive the owner of it. The offense is complete when the unlawful entering is

made with such specific intent, regardless of whether any property is actually taken and carried away.

Talarico argues that the reference to theft in Instruction No. 10 was vague and an instruction for grand theft and petty theft should have been given.

[¶ 33.] During the settling of the jury instructions, defense counsel did not object to the proposed instruction on specific intent and did not propose any instructions. This Court has held "[f]ailure to object to the jury instruction or propose an alternative instruction waives the issue for appeal." *State v. Hage*, 532 N.W.2d 406, 412 (S.D.1995) (citations omitted). Therefore, this issue was not preserved for appeal and we will not address it unless plain error is shown. *Id.* (citing *State v. Holloway*, 482 N.W.2d 306, 309 (S.D.1992)). As previously stated the plain error rule is only invoked in "exceptional circumstances." The defendant has the burden of establishing prejudice. *Dufault*, 2001 SD 66, ¶ 8, 628 N.W.2d at 757. "Further, to reverse a conviction for failure to give a proposed instruction, the defendant must show that the jury would have returned a different verdict if the proposed instruction was given." *State v. Webster*, 2001 SD 141, ¶ 7, 637 N.W.2d 392, 394 (citations omitted).

[¶ 34.] Talarico claims Instruction No. 10 was too vague and not specific enough to grand theft or petty theft. It appears that the defense is alleging that Instruction No. 10 should have been given twice in reference to grand theft and petty theft. We do not find this argument persuasive. Talarico has provided no evidence or authority in support of this proposition. In addition Talarico has failed to show that had the instruction been offered twice that there would have been a different verdict. Talarico has shown no prejudice. The instructions given were proper. We affirm.

### 6. Whether the trial court erred in allowing testimony from Judy Lakin, defendant's alleged spouse.

[¶ 35.] "A trial court's evidentiary rulings are presumed correct and are reviewed under an abuse of discretion standard." *State v. Owens*, 2002 SD 42, ¶ 78, 643 N.W.2d 735, 755; *State v. Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d 12, 15. Talarico's attorney asserted that the marital communications privilege applied and moved to bar Lakin from testifying at trial. Talarico maintains that the trial court should not have allowed Lakin to testify. Lakin testified at a pretrial motion hearing and at trial that she and the defendant were divorced. However, there is no evidence in the record of when the divorce occurred. The trial court indicated that it would rule on that issue at a subsequent pretrial hearing. It is not apparent from the record if the court ever ruled on this motion, however, Talarico's attorney objected during Lakin's testimony at trial. The court denied the objection.

[¶ 36.] First of all, the marital privilege only covers communication, not observations. *State v. Lorenz*, 2001 SD 17, ¶ 8, 622 N.W.2d 243, 245 (citing *State v. Hart*, 391 N.W.2d 677 (S.D.1986)). Secondly, even if married, the testimony is admissible under the "joint-participant" exception to the marital communications privilege. The exception provides that "the communication is not protected if it is one criminal, or potential criminal, talking to another." *State v. Witchey*, 388 N.W.2d 893, 895 (S.D.1986). The testifying spouse must be more than a receptor of a statement from the spouse that committed the crime. *Id.* "Active participation in, or furtherance of, patently criminal activity by the witness-spouse must be shown." *Id.* (citations omitted). In this case Lakin,

by her own admissions, was an active participant. In fact, Lakin received immunity from being prosecuted for her role in the crimes in exchange for her testimony. In addition, the trial court found as a matter of law, that she was an accomplice. The joint participant exception applies in this case. We affirm on this issue.

### 7. Whether the trial court erred in denying the defendant's Motion for Judgment of Acquittal.

[¶ 37.] At trial Talarico moved for judgment of acquittal. The court denied Talarico's motion. On appeal Talarico asserts that the trial court erred. Talarico claims that there was insufficient evidence to corroborate Lakin's testimony connecting Talarico to the crimes.

[¶ 38.] The standard of review for a motion for acquittal is "whether [the] State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged." *State v. Larson*, 1998 SD 80, ¶ 9, 582 N.W.2d 15, 17 (citations omitted). The trial court found as a matter of law that Lakin was an accomplice. Under SDCL 23A–22–8:

A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

[¶ 39.] Corroborating evidence need not be sufficient alone to sustain a conviction. *State v. Phyle*, 444 N.W.2d 380, 382 (S.D.1989). Evidence is sufficient to corroborate the testimony of an accomplice if it tends to "affirm the truth of the testimony of the accomplice and establish the guilt of the accused." *Id.* Whether corroborating evidence is sufficient is a

question for the jury. *Id.* After a review of the record we are convinced that the corroborating evidence, although not overwhelming, was sufficient to satisfy SDCL 23A–22–8.

[¶ 40.] Lakin was the primary witness in the state's case-in-chief. At trial Lakin testified to a series of burglaries which she claimed were committed by the defendant. Lakin testified as to the location of the thefts, the items taken, and the disposition of the stolen goods. Lakin testified that the first of three incidences took place in early August at a construction job site. As recounted by Lakin, Talarico kicked in the door to the garage breaking the doorknob and the lock box. Talarico entered the garage and took a table saw. He scratched the company name off of the saw so that it could be pawned, and pawned it in Rapid City.

[¶ 41.] Lakin testified that after Talarico pawned the table saw, they went to another house that was under construction. Talarico entered the garage and stole a black air compressor and put it in the trunk of the car. This time it was Lakin who pawned the stolen item at a different Rapid City pawn shop. Lakin stated that the air compressor was too heavy for her to lift so Talarico lifted the compressor in and out of the trunk, but that she was able to drag it on its wheels into the pawnshop.

[¶ 42.] Lakin described a third incident which took place at a home that was also under construction. According to Lakin, Talarico entered the construction trailer on the site and took a miter saw. They left the home and later, Talarico decided he wanted to return to the same site. They returned and stole a laser transit. Talarico pawned the miter saw in Spearfish, South Dakota and the laser transit was pawned by Lakin in Gillette, Wyoming.

[¶ 43.] At trial the state presented eleven witnesses in its case-in-chief including Lakin. Although not every piece of Lakin's testimony was corroborated, such is not the standard. At trial the testimony presented by the state was enough to confirm the truth of the accomplice testimony and establish the guilt of the defendant.

[¶ 44.] The locations, descriptions of the scene, identification of the property stolen and the fact the property was pawned was substantiated from the testimony of nine other witnesses. The testimony present by the state was as follows:

1. Dale Tipton, testified that a laser transit and a miter saw had been stolen from his construction site. Mr. Tipton testified that he found the door to his construction trailer open, the padlock was broken and his laser transit and miter saw were missing.

2. Jeff Mehlhaff gave testimony that a Makita table saw was stolen from the garage of a house he was building. Mr. Mehlhaff testified that he found his doorknob broken and his lock box lying on the ground.

3. William McCarty, testified that his air compressor had been stolen. Mr. McCarty recalled that it weighed approximately 85 pounds.

4. Alton Shumaker, a pawnbroker at a pawnshop in Spearfish, SD, testified that a miter saw was pawned by a gentleman he identified as Ronald Talarico.

5. Dick Baker, a pawnbroker at a pawnshop in Gillette, Wyoming, testified that a woman pawned a laser transit at his shop.

6. Stanley Butolth, a pawnbroker in Rapid City, South Dakota, testified that it was Ronald Talarico who pawned a table saw in early August.

7. Deputy Sheriff Rhoden responded to the call that there had been a burglary. Rhoden met with Dale and Shawn Tipton. Rhoden testified that at the scene he determined that the burglar obtained entry by prying loose a padlock on the trailer.

8. Deputy Sheriff Beug responded to the call that there had been a theft at the Mehlhaff site. Beug testified that when he arrived at the scene he noticed that the garage door had been kicked in. Beug recalled seeing a key box on the ground.

9. Deputy Sheriff Harmon investigated the thefts. Harmon testified that he interviewed Lakin. Lakin agreed to take Harmon to the locations of the burglaries. Harmon testified that he talked with the victims. Harmon described his role in contacting the pawn shops and recovering some of the stolen property. Harmon's testimony basically described how he had proceeded in investigating the crime.

[¶ 45.] The evidence placed the defendant in the area at the time the thefts were committed. Two witnesses identified the defendant in possession of stolen property. Property that was stolen from the same site was pawned by both Lakin and Talarico. The court properly instructed the jury that accomplice testimony must be corroborated and to determine if there is evidence apart from the accomplice testimony to connect the defendant to the crime.[4] We find there was sufficient evi-

4. The following jury instruction was given on accomplice testimony:

A person cannot be convicted of a crime upon the testimony of an accomplice unless

the accomplice is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroborative evidence is not sufficient

dence to corroborate Lakin's testimony. We affirm.

### 8. Whether counsel was ineffective rising to the point of plain error.

[¶ 46.] Talarico claims he was denied a fair trial due to ineffective assistance of counsel. Talarico asserts that his attorney failed: 1) to secure a ruling on his objection to Lakin's testimony on the grounds of spousal communications, 2) to object to Lakin's testimony based on spousal privilege, 3) to investigate Talarico's defense strategy, 4) to determine whether the potential jurors were influenced by the remarks made by other jurors, and 5) to object to Jury Instruction No. 10 on specific intent.

[¶ 47.] A claim for ineffective assistance of counsel is normally not addressed on direct appeal. *State v. Picotte*, 416 N.W.2d 881, 881 (S.D.1987). Claims of ineffective assistance of counsel are best addressed on habeas corpus proceedings. The purpose behind this rule is that a habeas proceeding allows the attorney to explain his actions and his tactics revealing a more complete picture of what occurred so that a meaningful review may be had.

*State v. Dillon*, 2001 SD 97, ¶ 28, 632 N.W.2d 37, 48. We decline to address defendant's claim for ineffective assistance of counsel at this time.

### 9. Whether the defendant is entitled to a new trial based on the cumulative effect of errors.

[¶ 48.] Talarico claims the cumulative effect of all the trial court's alleged errors supports a finding of "a denial of the constitutional right to a fair trial." This Court said "it is not required that the defendant receive a perfect trial, only that he receive a fair trial." *McDowell v. Solem*, 447 N.W.2d 646, 649 (S.D.1989). The defendant has not provided this Court with evidence that he did not receive a fair trial. We affirm.

[¶ 49.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

if it merely shows the commission of the offense, or the circumstances thereof.

You are hereby instructed that as a matter of law Judy Lakin is to be considered an accomplice.

Corroborative evidence is additional evidence to the same point and although it need not be sufficient standing alone to support a conviction, it must relate to some act or fact which is an element of the offense with which the defendant is charged. It must, in and of itself and independent of the evidence which it supports, fairly and logically tend to connect the defendant with the commission of the alleged offense. Corroborative evidence may consist of other evidence of circumstances, the testimony of a witness other than an accomplice, or the testimony or admissions, if any, of the defendant.

In determining whether an accomplice has been corroborated you must first assume the testimony of the accomplice to be removed from the case. You must then determine whether there is any remaining evidence which tends to connect the defendant with the commission of the offense. If there is none you must acquit the defendant. If there is such evidence his testimony is corroborated. But before you may convict the defendant you must find from all the evidence beyond a reasonable doubt that the defendant is guilty.