2018 IL App (2d) 170490
No. 2-17-0490
Opinion filed November 2, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-CF-239 |
| MELODIE GLINIEWICZ, | ) ) ) | Honorable James K. Booras, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    In this appeal, the State argues that the circuit court of Lake County erred both in granting defendant Melodie Gliniewicz's motion *in limine* and in denying the State's motion to reopen the proofs. For the following reasons, we reverse the trial court's order denying the State's motion to reopen the proofs and we remand this cause for further proceedings.

¶ 2                    I. BACKGROUND

¶ 3    On January 27, 2016, a Lake County grand jury returned a six-count indictment charging defendant with four counts of disbursing charitable funds without authority and for personal benefit (225 ILCS 460/19 (West 2016)) and two counts of money laundering (720 ILCS 5/29B-1(a)(1)(B)(i) (West 2016)). On March 9, 2016, the grand jury returned an indictment charging

defendant with four additional counts: one count of disbursing charitable funds without authority and for personal benefit (225 ILCS 460/19 (West 2016)), one count of conspiracy (disbursing charitable funds without authority and for personal benefit (720 ILCS 5/8-2(a) (West 2016); 225 ILCS 460/19 (West 2016)); and two counts of conspiracy (money laundering) (720 ILCS 5/8-2(a), 29B-1(a)(1)(B)(i) (West 2016)). In the indictments, the State alleged that defendant's deceased husband, Charles Joseph Gliniewicz (Joe), participated in these offenses.

¶ 4    In its discovery answer, the State indicated that it would seek to admit electronic communications (e-mail and text messages) between defendant and Joe that were recovered from Joe's cell phone. On January 30, 2017, defendant filed a motion *in limine* requesting that the trial court bar the State from introducing any evidence of communications between her and Joe. In her motion, defendant alleged that the State had disclosed numerous documents detailing confidential communications between defendant and Joe, including e-mail and text messages. Specifically, defendant claimed, "[t]hese confidential communications were obtained via grand jury subpoena and without the knowledge or consent of defendant Melodie Gliniewicz."[1] Defendant cited *People v. Trzeciak*, 2013 IL 114491, and section 115-16 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-16 (West 2016) (witness disqualification)) for the propositions that the martial-communication privilege has a long common-law history and was recognized to "promote marital harmony and stability." Defendant also noted that Illinois courts have specifically rejected the "joint criminal enterprise exception" to the marital-communication privilege, citing *People v. Krankel*, 105 Ill. App. 3d 988, 991 (1982). Defendant also argued that the agency exception to the privilege, recognized in *People v. Saunders*, 288 Ill. App. 3d 523

_____

[1] Defendant later argued that the messages were found during the execution of a search warrant on Joe's cell phone.

(1997), did not apply to the communications, because the indictments alleged only that defendant and Joe were co-conspirators, and not that she was his agent.

¶ 5 In response, the State admitted that the communications at issue were made while defendant and Joe were married. However, the State also asserted that section 115-16 of the Code bars spousal testimony, not communications themselves. 725 ILCS 5/115-16 (West 2016). The State contended that the admissibility of the communications must be analyzed under the marital-communication privilege and not the spousal-testimonial privilege. The State then requested that the trial court recognize the joint-criminal-enterprise exception to the marital-communication privilege, citing *United States v. Espudo*, No. 12-CR-236-IEG, 2013 WL 2252637 (S.D. Cal. May 22, 2013).

¶ 6 In reply, defendant claimed that the State "[drew] an inapt distinction between spousal testimonial privilege and marital privilege." Citing *Trzeciak*, 2013 IL 114491, ¶¶ 56-59 (Theis, J., specially concurring), she noted that, in discussing the marital-communication privilege, our supreme court frequently referred to section 115-16 of the Code. Defendant argued that the marital-communication privilege applies to all forms of confidential spousal communications, including electronic messages such as texts and e-mails.

¶ 7 On May 11, 2017, the trial court granted defendant's motion and ordered that "[t]he State shall not present any testimony or other evidence at trial concerning confidential communications between defendant and her husband, without first obtaining the court's permission." The court also barred the State from mentioning any such "confidential communications at trial" without the court's permission. The order applied to "emails, text messages, as well as any other confidential written communications between defendant and her husband."

¶ 8    The State filed a motion to reconsider.  In its motion, it argued that the "text messages are admissible under the third-party exception," citing *People v. Simpson*, 68 Ill. 2d 276, 280 (1977). The motion contained a summary of the communications at issue, which the trial court ordered redacted by agreement.  During the hearing on the motion, the State argued that the e-mail and text messages were "analogous to written communications which have been intercepted or eavesdropped."  Defendant argued that it was improper for the State to argue a new theory in a motion to reconsider.  She claimed that the third-party exception did not apply in this case, because there was "no loss, interception or mis-delivery."  Defendant acknowledged the holding in *Simpson* that a "conscious action by the defendant" results in "waiver of the privilege."  See *id.* at 281 (" 'a voluntary revelation by the holder [of the privilege] of the communication, or of a material part, is a waiver' " (quoting McCormick's Handbook of the Law of Evidence § 83, at 170 (Edward W. Cleary ed., 2d ed. 1972))).  Defendant contended that she "has not taken any action" to reveal these communications.  She noted that the communications were revealed by the State via a search warrant.  She argued that, unlike in *Simpson*, "[h]ere there's no allegation that the defendant has revealed the content of the communication."  She claimed that the purpose of the privilege "to promote free, frank and open communication" would be "essentially meaningless" if the court were to adopt the State's reasoning.

¶ 9    The trial court denied the State's motion to reconsider, ruling that "[a]ll of these communications are protected and thus they must not be disclosed."  The court agreed with defendant that the third-party exception did not apply.  It noted that there was no third party, loss, or misdelivery.  Finally, the court commented:

"And the third scenario where this would apply is as I indicated by the conscious waiver of the privilege, basically when someone communicates in the presence of a third party or one's knowledge of [*sic*] a third party has received it."

¶ 10   The State filed a certificate of impairment pursuant to *People v. Young*, 82 Ill. 2d 234 (1980), stating that the trial court's order barring the communications substantially impaired its ability to prosecute this case.  The State filed its opening brief on February 14, 2018.  Defendant filed her response brief on March 21, 2018.  In her response brief, citing *People v. Gardner*, 105 Ill. App. 3d 103 (1982), defendant acknowledged that "just like in *Simpson*, if the holder of a privilege (i.e., the defendant) *intentionally* reveals those contents to a third person, he has relinquished the privilege."  (Emphasis in original.)  Defendant then said, "[h]owever, in this matter, *there is no evidence in the record* of any such voluntary or intentional revelation by the defendant, and therefore the State's broad assertion does not apply to the case before this court." (Emphases added and omitted.)

¶ 11   Prior to filing its reply brief, the State filed an "Emergency Motion for a Remand to Reopen Proofs."  In the motion, the State alleged that it had received newly discovered information from the assistant state's attorney and chief of the criminal division, Jeff Pavletic. The State asserted that on April 2, 2018, the Lake County State's Attorney's Office received an e-mail from the attorney representing Fox Lake in a civil suit involving Joe's pension.  In the e-mail, that attorney said that "defendant had signed a consent to search her phone (the subject of defendant's motion in *limine* re: marital privilege) on October 8, 2015."  The State alleged that the e-mail did not include a copy of the consent form and that the State did not receive a copy of it until April 16, 2018.  The State also alleged that Joe's cell phone containing the text messages at issue "was purchased with charitable funds and is/was owned by Fox Lake."  This information

was also new.  The State attached a copy of the consent form.  The form is a "Department of Justice/Federal Bureau of Investigation" consent-to-search form, signed by defendant on October 8, 2015.  The form contains a description of the phone and the phone number.  The form authorizes a search of the phone and contains the following printed acknowledgment:

> "1. I have been asked by Special Agent of the Federal Bureau of Investigation to permit a complete search of:  Samsung Galaxy S5 847-***-****
>
> ***
>
> 2. I have been advised of my right to refuse consent.
>
> 3. I give this permission voluntarily.
>
> 4. I authorize these agents to take any items which they determine may be related to their investigation."

¶ 12    Attached to the consent form is a document listing the backup password for defendant's cell phone.  The State also attached "page KL 09263"[2] from its discovery answer.  The document is a "Lake County Major Crimes Task Force" investigative report.  That report documented a conversation between defendant and Detective Andrew Jones.  In the report, Jones wrote, "[w]e then asked her about a message between her and Joe regarding the hiding of money."  Jones then said, "I then advised [defendant] that we would also like to review the information contained in her phone.  [Defendant] advised that she would like to speak to her attorney first and we allowed her to do so."  Jones went on to state that, while he was following defendant to her home, defendant sent him a text saying that he could take the phone.

---

[2] "KL" are the initials of Kenneth LaRue, the assistant state's attorney assigned to this case.

¶ 13    Jones reported that, at the house, another investigator "presented [defendant] with a consent to search for the phone and [defendant] signed it." Jones told defendant that the phone would be returned as soon as the forensic analysis was complete. Jones reported that defendant gave the investigators access to the garage to search for "items of interest, which were removed."

¶ 14    Defendant filed a response to the State's emergency motion for a remand. In her response, she argued that the information concerning the consent form was not "newly discovered," because, according to Jones's report, the State knew of the consent form and knew that the investigators physically took possession of her phone on October 8, 2015. Defendant characterized the State's motion as "false and misleading." Defendant contended that the State failed to bring this information to the attention of the trial court and "may have violated" Rule 3.3(a)(1) of the Illinois Rules of Professional Conduct (Ill. R. Prof'l Conduct (2010) R. 3.3(a)(1) (eff. Jan. 1, 2010) (a lawyer shall not knowingly make a false statement of fact to a tribunal)).

¶ 15    This court granted in part the State's motion for a remand to reopen the proofs, stating that "[t]he case is remanded for the limited purpose of the trial court's consideration of the State's request to reopen the proofs on defendant's motion *in limine* regarding marital communications and other necessary proceedings pertaining to that motion."

¶ 16    On remand, the State filed a motion to reopen the proofs. In the motion, the State acknowledged that it had reports referring to the signed consent form but that its efforts to locate the form had been unsuccessful. Without the form, the State could not "have raised it to the trial court in good faith."

¶ 17    Defendant filed a response to the State's motion to reopen the proofs. In her response, she argued that the State had a duty to learn of any evidence known to the police, citing *People v. Carballido*, 2015 IL App (2d) 140760, ¶ 75, and that the State could not provide "a reasonable

excuse for failing to submit this consent form to the trial court prior to the hearing on the motion *in limine*." Defendant also claimed that she would be prejudiced by the delay. Finally, defendant argued that the consent form had no relevance to the issue of the marital-communication privilege "because the State cannot produce any evidence as to any specific text message between her and her husband that were present on her phone."

¶ 18 Both parties cited *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 389 (2004), which set forth three factors that the trial court should consider in deciding to whether to reopen the evidence: "whether the moving party has provided a reasonable excuse for failing to submit the additional evidence *during trial*, whether granting the motion would result in surprise or unfair prejudice to the opposing party, and [whether] the evidence is of the utmost importance to the movant's case." (Emphasis added.)

¶ 19 At the hearing on the State's motion to reopen the proofs, the State argued that its excuse for failing to raise the consent-form issue was reasonable, though not perfect. The State contended that the fact that it did not have form until April 2018 was unrebutted. It maintained that it would have been "unethical" to argue that defendant signed a consent form "if we couldn't even produce the consent form." The trial court asked the State why it could not locate the form, and the State responded, "[w]e've searched" and "[w]e don't have the [contents of the] phone too, which was supposedly done. We don't have that information either." The State said that it knew what was in defendant's phone, "based upon the defendant's statements." It explained that defendant had said, "[w]ell what are you guys looking at? You will find the same stuff as my husband's phone." The State maintained that, by her statements and signing the consent form, "she is waiving her marital privilege." The trial court posed a hypothetical to the State and asked whether a wife who generally consents to a search of her house waives the marital-

communication privilege to "letters written from one spouse to another." In response, the State said, "if she [was] giving voluntary consent for officers to enter her home and seize whatever they feel relevant *** I would say yes." It then added, "[t]hat's not the situation, judge; the situation is where she specifically gave the State the ability to look at text messages on her phone." The State claimed that, whether it searched the phone or not, "[defendant] is still exposing those [messages] to a third party."

¶ 20 The State argued that granting the motion to reopen the proofs would not result in any surprise or unfair prejudice. It noted that the only prejudice claimed by defendant "is additional time, and that's speculative and elusive, judge."

¶ 21 The State next argued that the third *Dowd* factor, whether the evidence is of the utmost importance to the State's case, weighed in its favor. Specifically, by signing the consent form and exposing her phone to a third party for review, defendant waived her marital-communication privilege. The State maintained that, if the court did not reopen the proofs, the court was "not going to have all of the evidence that is available to resolve this case." The State stressed that "perhaps more important" is that, when a case is not before a jury, greater liberty should be allowed in reopening the proofs.

¶ 22 Defense counsel argued that the State could not provide a reasonable excuse for not obtaining the consent form, asking rhetorically, "[h]ow can the State tell this court that the State's Attorney's Office of Lake County can't get an FBI consent form from an FBI officer that took the interview but the Village of Fox Lake attorney can?" Counsel argued that there was "no way they made any reasonable attempts to locate the form" and added, "I don't know whether they just missed it or whether they glossed over it." Counsel again cited *Carballido*, 2015 IL App (2d) 140760, ¶ 75, for the propositions that the State had a duty to learn of evidence known

to the police and that "even if the police fail to inform the prosecutor that evidence exists, the prosecution remains accountable for that omission." The trial court asked counsel, "[h]ow about in the interest of justice that I should let them, even though they made the error and not brought it forward, so they should be able to at least argue that there is a consent—to the search of the—of the defendant's phone?" Counsel responded, "*Dowd*" and the "*Carballido* case; 2015 IL App (2d) 140760; judge, that's the law." As to unfair prejudice, counsel pointed out that the motion to dismiss was still pending and "we've never had a realistic trial date." Counsel noted that "the case has been pending in the appellate court for a year." He said that defendant's life was on hold and that, if the trial court granted the motion, the case would be unnecessarily delayed, "without the fault of the defendant."

¶ 23 Defense counsel argued that, as to the third *Dowd* factor, the evidence could not be of the "utmost importance," because it has no relevance. Counsel said, "[t]here is nothing in the police reports, in the 12,000 pages of discovery; there is not [*sic*] mention of what they found on her phone." Counsel stated that no one knew what defendant meant when she told the police that they would find "the same stuff on my phone that you are [*sic*] on his phone." In answer to the trial court's question, counsel contended that a waiver of the marital-communication privilege must be specific and that defendant did not say "I hereby consent for you to take all of my communications with my deceased husband." Counsel said that, even though defendant said "[y]ou will probably find the same stuff[,] they don't know what was in her mind." Counsel then noted that defendant said she felt threatened during the interview. According to counsel, the police not only threatened to get a search warrant for defendant's phone, they actually got a search warrant but never executed it. Counsel said, "that can't—that can't be her knowingly and voluntarily waiving the contents of her marital privilege."

¶ 24    During rebuttal argument, the State pointed out that the search warrant was a state warrant, signed the day before defendant executed the consent form. The State confirmed that the warrant was never executed. It maintained that it made "exhaustive efforts" to locate the consent form. The State noted that the investigation involved several investigators from "federal, state and local agencies." It was a "death investigation that spun out into something else." The State argued that the court should consider the interest of justice in allowing all relevant evidence from both sides and that by denying the motion the court cannot "magically fix the year that's gone by so far." As to defendant's relevance argument, the State said, "[w]e know exactly what was on her phone; at least part of it; because it was on her spouse's phone." Regarding defendant's voluntariness argument, the State did not object that defendant failed to plead that her consent was involuntary. Instead the State commented, "[w]e never told her that we have what's on her spouse's phone. This was a free and voluntary—again, this is for the next step; but it is of the utmost importance to the movant's case, judge, in that she voluntarily exposed not just what was on her phone, but what was on Joe's phone."

¶ 25    In surrebuttal, defense counsel noted that the State could have asked the trial court to reconsider its ruling at any time, without taking an interlocutory appeal. Counsel also commented that he never heard "Mr. LaRue say, well, we went and asked the FBI for it." LaRue interjected and said, "I've called the agent several times, who is now retired."

¶ 26    The trial court found that the State's "reasonable excuse" argument was not convincing. The court also found that the State had knowledge and was charged with having knowledge of the consent form "even though, as I said, I don't know to what extent that consent form would assist them in any way in their case." The court stated that any delay results in unfair prejudice because "witnesses disappear, retire, they are gone." As to the third *Dowd* factor, the court said,

"[i]s the evidence of the utmost importance?  I submit, folks, it's not because it doesn't exist.  It hasn't been analyzed."  The court said that the issue was not ripe, because the phone had not been analyzed and no one knew what was in it.  Regarding defendant's comment to the police that they would find on her phone the same things that were on Joe's phone, the court said, "I don't know what she meant by that."  With respect to the issue of waiver, the court said, "I don't know to what extent that waiver, if there is a waiver[,] the consent or waiver applies to the marital privilege.  That's something for someone else to determine and make that call at a later junction.  Therefore, I am saying at this point that the issue is not ripe."  The court denied the State's motion to reopen the proofs.

¶ 27    We ordered that the State supplement the record on appeal with the report of proceedings from the hearing on the motion, along with any exhibits presented to the trial court.  We denied the State's motion to file an amended motion and we also denied defendant's motion for sanctions.  Further, we ordered that the State file its reply brief by July 3, 2018, and address the issue of whether the trial court erred when it denied the State's motion to reopen the proofs.  Defendant was given until July 24, 2018, to file her surreply to the State's reply brief.  Both parties timely filed their briefs.

¶ 28                                   II. ANALYSIS

¶ 29          A. Motion *in Limine*

¶ 30    Initially, on defendant's motion, we strike the first two paragraphs of the State's statement of facts, for failure to comply with Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) (the statement of facts shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the

pages of the record on appeal). Our review is not hindered by the State's error; therefore, we will address its arguments.

¶ 31    Defendant's motion *in limine* sought to bar evidence of communications between her and Joe, specifically those that were recovered from his cell phone and were related to their alleged criminal conduct.

¶ 32    A motion *in limine* permits a party to obtain a pretrial order excluding inadmissible evidence and protecting the moving party from the prejudicial impact of any mention of the evidence in front of the jury. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 549 (1981). Because the grant of a motion *in limine* is a powerful weapon, "courts must be certain that such action will not unduly restrict the opposing party's presentation of its case." *Id.* at 550. A motion *in limine* should be as specific as possible and set out all relevant facts so that the trial court can properly assess the relevance and admissibility of the evidence at issue as well as any potential unfair prejudice. See *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 27 (the motion must be specific and allow the court and the parties to understand what evidence is at issue). Where there is no live testimony, the trial court "must rely upon counsel's representations or offers of proof to determine what the context for the evidentiary ruling will likely be at trial." *People v. Drum*, 321 Ill. App. 3d 1005, 1008 (2001). The trial court has the discretion not to address the evidentiary issue and may wait for the issue to arise at trial. *Id.* It is equally clear that a pretrial ruling on a motion *in limine* "is *always* subject to reconsideration during trial." (Emphasis added.) *Id.* This is because the trial court "rules on it in a vacuum, before hearing the full evidence at trial that may justify admission or require exclusion." *Cunningham v. Millers General Insurance Co.*, 227 Ill. App. 3d 201, 205 (1992). Generally, a trial court's ruling on a motion *in limine* will not be reversed absent a clear abuse of discretion. *Drum*, 321 Ill. App. 3d

at 1009. An abuse of discretion exists where the trial court's decision is arbitrary, fanciful, or unreasonable such that no reasonable person would take the view adopted by the trial court. *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010). However, we review a trial court's decision regarding privilege *de novo*. *King Koil Licensing Co. v. Harris*, 2017 IL App (1st) 161019, ¶ 78. Likewise, when the facts are not in dispute and credibility is not implicated, the question of whether a waiver has taken place is a legal one, and no deference is owed to the trial court's decision. *Brunton v. Kruger*, 2015 IL 117663, ¶ 72.

¶ 33 The State argues that the trial court misapplied section 115-16 of the Code (725 ILCS 5/115-16 (West 2016)), because the third-party exception to the privilege applies. We disagree.

¶ 34 Section 115-16 sets out the marital-communication privilege. *Trzeciak*, 2013 IL 114491, ¶ 40. "First, the communication must be an utterance or other expression intended to convey a message. Second, the message must be intended by the communicating spouse to be confidential in that it was conveyed in reliance on the confidence of the marital relationship." *Id.* ¶ 44. The burden of establishing that a privilege applies is on the party claiming it, who must establish all of the necessary elements. *People v. McNeal*, 175 Ill. 2d 335, 359 (1997).

¶ 35 In its response to defendant's motion *in limine*, the State conceded that "[a]ny text messages and emails exchanged between the defendant and Charles Joseph Gliniewicz contain information privately disclosed between husband and wife in the marital relationship." Thus, although the text messages and e-mails at issue are not in the record, the State admits that the communications were privileged absent some exception to or waiver of the privilege.

¶ 36 The State argues that the third-party exception applies to the communications. The State notes that in *Simpson*, 68 Ill. 2d at 280, our supreme court said:

"Communications in the presence and hearing of a third party are generally not considered to be confidential communications within that privilege. (*People v. Palumbo* (1955), 5 Ill. 2d 409, 414-15.) It is likewise apparent that one in whose presence a communication between spouses is made may testify to that conversation, even though the witness overheard the conversation by eavesdropping. Similarly, one may testify who learns the contents of a written communication from one spouse to another by interception, or through loss or misdelivery by the custodian. *McCormick, Evidence* sec. 82, at 167 (2d ed. 1972).

¶ 37 In *Simpson*, an assistant state's attorney testified that he was present when two detectives questioned the defendant's wife. The defendant was also present for the interview. The wife was asked to "[t]ell us what he told you." (Internal quotation marks omitted.) *Id.* at 279. She responded that the defendant "said that he shot Gwen." *Id.* The defendant spoke up and said, "[y]es, but I told you later I was lying." (Emphasis and internal quotation marks omitted.) *Id.* The supreme court held that the defendant's public reply to his wife's statement rendered admissible the account from the interview. *Id.* at 281. The court said that the defendant did not have to make such an acknowledgement and could have preserved the privilege by remaining silent, "despite the wife's revelation of that conversation to the police." *Id.* at 281-82. We agree with defendant that the third-party exception does not apply here. Unlike in *Simpson*, the communications in this case were found through the execution of a search warrant, not by a third party listening to a conversation. Likewise, the communications were not found by "interception, or through loss or misdelivery by the custodian." *Id.* at 280.

¶ 38 We also reject the State's argument that we should adopt a joint-criminal-enterprise exception to the marital-communication privilege. The State points us to several foreign

jurisdictions with statutes similar to ours where reviewing courts recognized such an exception. But Illinois has never adopted it. See *Saunders*, 288 Ill. App. 3d at 526; *Krankel*, 105 Ill. App. 3d at 991. The trial court was bound by the holdings in these cases. Although we are not similarly bound by these decisions, we presume that the General Assembly is aware of them. *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458 (1997) ("In amending a statute, the legislature is presumed to have been aware of judicial decisions interpreting the statute and to have acted with knowledge."). We note that section 115-16 has been amended six times since *Krankel* was decided. Our supreme court has made it clear that changes to the statute are a matter for the legislature. *People v. Palumbo*, 5 Ill. 2d 409, 413-14 (1955); *People v. Kendall*, 357 Ill. 448, 456 (1934). Any expansion of the exceptions to the marital-communication privilege is a matter of public policy, committed to the sound judgment of the legislature.

¶ 39    Similarly, we reject the State's invitation to expand upon the "agency" exception recognized in *Saunders* and *People v. Hommerson*, 399 Ill. App. 3d 405 (2010). In both of those cases, the wives were acting solely as agents for their husbands. In this case, the indictments alleged that defendant and Joe were coconspirators. We find no error in the trial court's granting defendant's motion *in limine*, which by law and the court's written order was subject to reconsideration.

¶ 40                      B. Motion to Reopen Proofs

¶ 41    Next, the State argues that the trial court abused its discretion when it denied the State's motion to reopen the proofs.

¶ 42    A trial court's ruling on a motion to reopen proofs is reviewed for an abuse of discretion. *In re Marriage of Suarez*, 148 Ill. App. 3d 849, 858 (1986). "In rendering its decision, the trial court should consider whether the moving party has provided a reasonable excuse for failing to

submit the additional evidence during trial, whether granting the motion would result in surprise or unfair prejudice to the opposing party, and [whether] the evidence is of the utmost importance to the movant's case." *Dowd*, 352 Ill. App. 3d at 389 (citing *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 248-49 (1984)). Greater liberty should be allowed when the case is tried without a jury. *In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 55.

¶ 43    First, this case has not been tried. The ruling in question was a pretrial evidentiary ruling on a motion *in limine* and there was no live testimony. The trial court had the discretion to order an evidentiary hearing or, in the alternative, wait until the evidentiary issue arose at trial. The trial court's ruling was based solely on the representations of counsel and was subject to reconsideration at any time up to and including trial. It is therefore questionable whether the *Dowd* factors apply to motions *in limine*. At oral argument, both parties acknowledged that the *Dowd* factors should not ordinarily apply to motions *in limine*. However, since the trial court considered the *Dowd* factors in ruling on the State's motion to reopen the proofs, we will examine its reasoning in that context.

¶ 44    As to the first factor, the trial court found that the State's excuse for failing to raise the consent-form issue was not convincing. However, we recognize that defendant's motion *in limine* claimed that defendant had not consented. At the hearing on the motion to reopen the proofs, defense counsel argued that defendant had not taken any action to reveal the communications at issue. In her response brief before this court, defendant states that she did nothing to lose the confidential nature of the communications. Defendant's brief states that "there is no evidence in the record of any such voluntary or intentional revelation" of the communications. An attorney's representation of the facts should be as accurate as can be determined by a reasonable investigation of the facts. Whether intentional or not, counsel's

representations conflict with the State's account in its motion to reopen the proofs. During argument on the motion to reopen the proofs, counsel suggested that the State "may have just missed [the consent form] or glossed over it." The State argued that it would have been unethical to argue that defendant consented to the search of her cell phone if the State could not produce the consent form. Although the trial court found the excuse unconvincing, it must be remembered that defendant's position was that she never took any action to waive the marital-communication privilege. At best, the reasonable-excuse factor is neutral. The State might very well have been skeptical about raising the waiver/consent issue without documentary proof.

¶ 45    Even if the State's excuse was not reasonable, that factor did not justify denying the motion to reopen the proofs. As noted, greater liberty should be allowed when a case is being tried without a jury. *Bennoon*, 2014 IL App (1st) 122224, ¶ 55. We are also troubled by defense counsel's reliance on *Carballido*, 2015 IL App (2d) 140760, as justification for arguing that the State failed to provide a reasonable excuse. *Carballido* involved an alleged *Brady* violation when the State failed to produce an investigatory officer's field notes. We reversed the trial court's third-stage denial of the defendant's postconviction petition. We were concerned with the fairness of the defendant's trial. We stated that, "[i]in the context of a due-process claim, the State is accountable for the actions of police officers." *Id.* ¶ 75. At a hearing on a motion *in limine*, however, the concern should be the completeness and accuracy of the information that aids the trial court in making its ruling. In this case, the trial court essentially imposed a discovery sanction where there was no discovery violation. In doing so, the trial court abused its discretion.

¶ 46    The trial court also erred in finding that the State had knowledge and was charged with having knowledge of the consent form. In *People v. Thompkins*, 121 Ill. 2d 401 (1988), the

supreme court held that the knowledge of interview notes prepared by a Birmingham, Alabama, police officer could not be imputed to the State. The court looked to the language of Illinois Supreme Court Rule 412(g) (eff. July 1, 1982) and said that, since Alabama officials "are not subject to the jurisdiction of the Illinois courts," "the People had no discovery obligation under Rule 412 to procure and turn over to the defense the alleged memorandum." *Thompkins*, 121 Ill. 2d at 427. As in our case, the record in *Thompkins* showed that the assistant state's attorney made diligent attempts to obtain the material. *Id.* Here, the agency in possession of the consent form was the FBI, which is not subject to the jurisdiction of Illinois courts. A state court lacks "jurisdiction to compel the FBI to produce documents subpoenaed by a defendant in the course of a state criminal prosecution." *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999); see also *Kasi v. Angelone*, 300 F.3d 487, 504 (4th Cir. 2002).

¶ 47 The second *Dowd* factor is surprise or unfair prejudice. Defendant does not claim surprise. She argues simply that she is prejudiced by the time that this appeal is taking. Defendant forgets that this appeal is the result of her motion *in limine*. The State had a right to appeal the trial court's ruling. *People v. Drum*, 194 Ill. 2d 485, 490 (2000). Defendant cites no authority for her prejudice argument. As such, defendant's argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 48 As to the third factor, the State argues that the e-mail and text messages between defendant and Joe are of the utmost importance to the State's case. We agree. The messages might reveal correspondence between coconspirators engaged in financial crimes. The State argues that without this evidence its case will be at least substantially impaired. We see no reason to doubt that assessment. See *People v. Keith*, 148 Ill. 2d 32, 40 (1992) (reviewing courts rely on the good-faith evaluation by the prosecutor of the impact of a suppression order). We

reject defendant's argument that the consent form and the circumstances surrounding it are irrelevant "because the State cannot produce any evidence as to what was contained on defendant's cell phone relating to any specific text messages between her and her husband." Defendant essentially parrots the trial court's comment that the evidence "doesn't exist." But defendant's motion *in limine* challenged the admissibility of communications between defendant and Joe, recovered from Joe's phone and tendered in discovery. The State intends to introduce that evidence at trial by laying a proper foundation.

¶ 49 At oral argument, defense counsel acknowledged that, in defendant's conversation with the police regarding consent to search her cell phone, defendant said something to the effect of, "[y]ou'll find the same stuff on my phone as on Joe's phone." However, counsel argued that any waiver of the marital-communication privilege must be specific, and, since no one knew what was on defendant's phone, the court could not find that a waiver had occurred. We disagree. The holder of a privilege may waive it, explicitly or implicitly. *Hommerson*, 399 Ill. App. 3d at 413-14 (defendant waived privilege by failing to invoke it during his wife's testimony).

¶ 50 We hold that the State has, by its representations to the trial court and by the exhibits, made a *prima facie* case of waiver. Defendant concedes that "a voluntary revelation by the holder of the privilege of the communication, or of a material part, is a waiver of that privilege," citing *Simpson*, 68 Ill. 2d at 281-82. According to the documents we have reviewed, defendant knew that the police wanted to review the messages between her and Joe on her cell phone. Jones asked defendant "about a message between she and Joe regarding the hiding of money." Jones told defendant that "[w]e would like to review the information contained in her phone." Presumably, after speaking to her attorney, defendant gave the police her phone and signed a written consent form. As the State represented, defendant volunteered that the information on

her phone and Joe's phone would be the same. The use of cell phones to transmit and store electronic communications in the form of e-mail and text messages is a matter of common knowledge. *People v. Tassone*, 41 Ill. 2d 7, 12 (1968) (courts will take judicial notice of that which everyone knows to be true). The trial court commented that it did not know what defendant meant when defendant said, "[y]ou are going to see the same as my husband's." The State's position is that, in the context of the conversation with the police and the consent to search, defendant was exposing her communications with Joe to law enforcement and therefore waiving the marital-communication privilege. At the hearing on the State's motion to reopen the proofs, defense counsel argued that defendant's consent was not voluntary. Thus, the facts regarding defendant's waiver/consent are contested. The trial court may resolve the issue at the reopened hearing on the motion *in limine*.

¶ 51                              III. CONCLUSION

¶ 52    The trial court did not err in granting defendant's motion *in limine* regarding the marital-communication privilege. However, the trial court erred in denying the State's motion to reopen the proofs on the motion. The order denying the motion to reopen the proofs is reversed, and this cause is remanded for further proceedings.

¶ 53    Reversed and remanded.