**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220489-U

Order filed December 5, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0489 Circuit No. 21-DV-911 |
| | ) | |
| IMRAN SIDDIQUI, | ) ) | Honorable George A. Ford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices McDade and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: (1) The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. (2) The court did not abuse its discretion by denying defendant's motion *in limine* regarding the victim's medical records.

¶ 2     Defendant, Imran Siddiqui, appeals his convictions for domestic battery arguing (1) the State presented insufficient evidence to prove his guilt beyond a reasonable doubt, and (2) the Du Page County circuit court abused its discretion when it denied defendant access to the victim's medical records. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant by superseding indictment with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2020)), alleging that defendant "knowingly and without legal justification, made physical contact" both of an insulting and provoking nature and caused bodily harm to Haffa Rasheed "in that said defendant struck *** Rasheed about the head, causing pain." The case proceeded to a bench trial.

¶ 5          Prior to trial, defendant sought to subpoena Rasheed's medical records, asserting that they would show Rasheed "received treatment *** for an autoimmune disorder *** as a result of unexplained bruising throughout her body. She was diagnosed *** with rheumatoid arthritis and ha[d] been prescribed medication which cause[d] bruising" during the time of the incident. Over the State's objection, the court granted defendant's subpoena request, subject to its *in camera* review, and limited the request to records regarding "rosacea and rheumatoid arthritis" from January 6, 2020, to August 7, 2021. Following its *in camera* review of the medical records subpoenaed by defendant, the court "did not find any records that were *** material or relevant to the Defendant's case-in-chief," and denied defendant's motion. Relevant to this appeal, the records showed that Rasheed sought treatment in two separate instances unrelated to any aforementioned diagnosis. No document indicated that Rasheed suffered from any skin condition or disease that defendant proffers might have caused her injuries on the date of the offense.

¶ 6          At trial, Rasheed testified that she and defendant were no longer married. On August 7, 2021, Rasheed was at home with defendant and their three children. That morning, Rasheed took their children downstairs while defendant remained upstairs resting. At some point, their three-year-old son asked for help to use the bathroom, and Rasheed told him to ask defendant. When he went upstairs to find defendant, Rasheed fell asleep. Rasheed then heard defendant screaming and

cursing at the "top of his lungs" from upstairs. Defendant came downstairs "screaming and yelling" at Rasheed and asked why she "didn't go to Orlando and die over there[,]" referring to a canceled flight. Defendant continued "yelling and screaming and cursing" at Rasheed "for no reason *** in front of three minors and none of it was making any sense." When Rasheed asked if they had "an airplane [in the] driveway[,]" defendant told Rasheed that if she said, "one more word," he was going to "break" her head and mouth. Defendant told their daughter, "if you say one more word, I'm going to break your head, too[.]" Defendant "punched" Rasheed's face "very quick" with his left hand in a closed fist. At this time, defendant and Rasheed were "face-to-face." Defendant used "a lot of pressure" but "stopped a little bit" so his hand made contact with the right side of Rasheed's cheek, which resulted in a "scrape[ ]." Rasheed described the punch as "hurting" and "burning," and feeling like she "wanted to cry [and] go away from there." Eventually, Rasheed called the police. The State admitted two photographs that Rasheed took of the injuries to her face. A small red scratch is visible on Rasheed's right cheek.

¶ 7        Rasheed described another incident from January 6, 2020, when defendant cycled through fits of anger, cursing, and insulting Rasheed and then apologizing. At some point, Rasheed woke defendant and said, "you're seriously sleeping" after what had occurred earlier and defendant "blew up," "hit" Rasheed, and "ripped" her clothes off. Despite Rasheed's attempts to defend herself, defendant hit her, which caused bruises and scratches on her face. Rasheed's photographs of the resulting injuries showed a bruise on her upper arm and a mark on her face.

¶ 8        On cross-examination, Rasheed denied (1) having a medical condition that caused bruising or seeing a doctor "related to some or any kind of bruises appearing" on her skin, (2) having rosacea or ever being treated for a skin condition, (3) ever having acne on her face, or (4) having "bumps and bruises" on her face due to a skin disease. Rasheed admitted that she saw a doctor

because her "joints were hurting" and agreed that she had rheumatoid arthritis and took medication to treat it. When asked if she recalled visiting a specific doctor, Rasheed responded, "I don't know." Counsel showed Rasheed several photographs from 2015 and 2016 and asked if the marks on Rasheed's face in the photographs were acne. Rasheed responded, "Maybe. I don't know." When asked if the photographs fairly and accurately depicted Rasheed, she responded, "I don't know."

¶ 9      Rasheed admitted that she did not immediately call 911 after the incident but did eventually make the call. Counsel asked, "[a]nd you further told the dispatcher that [defendant] tried to hit [you], but then he did not. He stopped." Rasheed stated she told the dispatcher defendant "hit" her and "by the time [defendant] stopped his punch his hand had already made contact with [her] face and it had ripped [her] skin." Counsel repeated the question. Rasheed responded, "[h]e did. He stopped after his hand already made contact with my face." Rasheed did not recall telling dispatch that defendant "tried to hit [her] but he did not. He stopped." Counsel used Rasheed's 911 call for impeachment. In the audio recording, Rasheed told the dispatcher, "My husband *** got mad at me. And he used to hit me, like last time a year ago he got in trouble with [the] police. So he tried to hit me, but he did not, he stopped, but he still punched me a little on my face." The court granted the State's request to play the entire audio for completion. In the remaining audio, Rasheed stated, "and my skin got a little scratched."[1] Defense counsel also asked, "[s]o you didn't *** actually sustain a bruise to your face, did you?" Rasheed indicated that she observed the bruise the day after but did not take photographs because she was "going through a trauma." Referring to the battery, counsel asked, "[defendant] used his left hand, correct?" When Rasheed gave an indefinite

---

[1]The State did not indicate at what point they stopped the audio recording, but stated afterward, "[t]hat would be the only additional portion [it] intends to play."

answer, counsel asked "[a]re you not certain whether [defendant] is right or left handed?" Rasheed responded, "[defendant's] practice is to hold me with his right [h]and and hit me with his left." When asked again whether Rasheed knew if defendant was right or left-handed, she said, "I don't know."

¶ 10        Officer Justin Blondin testified that on August 7, 2021, he responded to a domestic violence call. Blondin made contact with Rasheed and observed that she was "visibly upset and crying and she had a fresh wound on her right cheek." Blondin described the wound as a scratch where he observed blood, though "not draining blood." Later, Blondin interviewed defendant. The State admitted People's exhibit No. 3, which contained two video recordings. One video showed defendant's interview with police.[2]

¶ 11        The other video showed defendant on August 8, 2021, at the police station requesting the officers to stand by while he retrieved his items from the residence. Independent of any questions, defendant spoke about the events on August 7. Specifically, defendant referred to the scratch on Rasheed's face and stated that he now "recalled what happened." Because he was "half-asleep and half-awake" and made sure that he did not "hit" Rasheed, defendant believed the scratch "maybe" resulted from him pointing his finger in Rasheed's face and Rasheed tried to grab defendant's hand and "jerk" it away. Defendant explained that "otherwise if [he] would have hit [Rasheed] it would have been a slap," because he "made sure [he] shouldn't hit her." Defendant continued that there was no way he could have "hit her on the left cheek" because she was lying on the couch. Defendant also stated that he was "not sure" he could have scratched Rasheed because his nails were short.

_____

[2]This video is not included in the record on appeal.

5

¶ 12    On cross-examination, Blondin indicated that defendant voluntarily spoke with officers following the reported domestic battery. Blondin did not observe any bruises on Rasheed's face, arms, or legs, nor did Rasheed report bruises after the incident. Defense counsel admitted a photograph of defendant's hands. When asked to describe the length of defendant's fingernails, Blondin could not say if they were long or short.

¶ 13    The court found defendant guilty of domestic battery. In doing so, the court commented on defendant's story to police and how it corroborated Rasheed's version, in that defendant admitted that he argued with Rasheed after his son came upstairs and woke him. The court discussed defendant's interview and his statement that he "did not hit" Rasheed in comparison with defendant's statement the next day that he "now recall[ed] what had occurred" and "admit[ted]" that Rasheed "jerked away and that's how the injury may have occurred." The court concluded that Rasheed's testimony was "credible" and "supported by the physical evidence," and "Blondin's testimony as well as the Defendant's own statements." The two counts merged, and the court sentenced defendant to one year of conditional discharge. Defendant appealed.

¶ 14                                    II. ANALYSIS

¶ 15                            A. Sufficiency of the Evidence

¶ 16    On appeal, defendant first argues that the State did not prove him guilty beyond a reasonable doubt of domestic battery, where it failed to prove that the described injury was a result of defendant "punch[ing]" Rasheed's face. When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard of review does

not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Thus, we afford great deference to the trier of fact, "to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not retry a defendant and must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. To prove defendant guilty of domestic battery, the State had to establish that defendant knowingly, without legal justification, made physical contact of an insulting and provoking nature with Rasheed, a family member, and that physical contact resulted in bodily harm. See 720 ILCS 5/12-3.2(a)(1), (2) (West 2020).

¶ 17        At the outset, we note that, in reaching its decision, the court relied on defendant's initial recorded interview that was played in court. However, no video included on appeal shows this interview. We will construe this omission against defendant. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that *** the trial court was in conformity with law ***. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 18        Here, Rasheed testified that defendant initially used "a lot of pressure," but attempted to stop himself from hitting her. Despite defendant's attempt to control himself after already beginning the act, his swing resulted in the "probable consequence" of making contact with Rasheed's face, causing a scratch. *People v. Hickman*, 9 Ill. App. 3d 39, 44 (1973) ("[W]here one in the commission of a wrongful act commits another wrong not meant by him, or where in the execution of an intent to do wrong, an unintended act resulting in a wrong ensued as a natural and

7

probable consequence, the one acting with wrongful intent is responsible for the unintended wrong."). Rasheed was adamant that defendant made contact with her face and described the contact as painful and resulting in a "scrape[ ]." Additional evidence corroborated Rasheed's testimony, including her 911 call where she told the dispatcher that defendant tried to hit her and stopped, but "still punched [her] a little on [her] face" causing a scratch, also observed by Blondin and corroborated by photographs. Moreover, Blondin's observations that Rasheed was visibly upset and crying corroborated her testimony that defendant's conduct was insulting and provoking. We find that the State presented sufficient evidence that defendant's punch, even if imperfectly executed, resulted in both insulting and provoking contact and bodily harm to Rasheed beyond a reasonable doubt.

¶ 19        Importantly, the court found Rasheed credible and defendant incredible. Specifically, the court noted that the physical evidence, Blondin's testimony, and parts of defendant's story corroborated and supported Rasheed's testimony. See *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979) ("the trier of fact is free to believe part of one's testimony without believing all of it"). In contrast, the court found defendant's statements inconsistent, where he first stated that he did not hit Rasheed and denied any physical contact, but the next day had suddenly "recalled" an explanation for Rasheed's injuries. We agree with the court and see no reason to substitute our judgment for the court's credibility determinations. See *Jackson*, 232 Ill. 2d at 280-81.

¶ 20                                B. Medical Records

¶ 21        Next, defendant contends that the court abused its discretion when it denied defendant access to the victim's medical records. Defendant concedes that he failed to preserve his challenge to the court's denial of his motion *in limine* and requests that we review his claim under both prongs of the plain error analysis. The plain error doctrine permits a reviewing court to remedy a

8

"clear or obvious error" when: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step of the plain error analysis is to determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 22    A motion *in limine* permits a party to obtain a pretrial order admitting or excluding evidence. *People v. Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. A motion *in limine* should be specific and "set out all relevant facts so that the trial court can properly assess the relevance and admissibility of the evidence at issue as well as any potential unfair prejudice." *Id.* A pretrial ruling on a motion *in limine* is always subject to reconsideration at trial because the court rules on it in a vacuum before hearing the trial evidence that might justify either admission or exclusion of the proposed evidence. *Id.* While medical records as the subject of a motion *in limine* may be admissible in certain circumstances, this fact " 'does not give parties free rein to introduce medical records as a substitute for expert medical testimony.' " *People v. Arze*, 2016 IL (1st) 131959, ¶ 110 (quoting *Troyan v. Reyes*, 367 Ill. App. 3d 729, 736 (2006)). " '[M]edical records may be excluded if they are not relevant.' " *Id.* (quoting *Troyan*, 367 Ill. App. 3d at 736). "Generally, a trial court's ruling on a motion *in limine* will not be reversed absent a clear abuse of discretion." *Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32. "An abuse of discretion exists only where the trial court's decision is arbitrary, fanciful, or unreasonable ***." *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010).

¶ 23    Here, the court properly permitted a limited *in camera* review of Rasheed's medical records based on counsel's proffered "good-faith belief" that the medical records "might provide impeachment evidence." *People v. Sauls*, 2022 IL 127732, ¶ 48. However, defendant failed to

establish that, following its *in camera* review, the court abused its discretion in excluding Rasheed's medical records. Specifically, the court is presumed to know and follow the law and, therefore, is presumed to have known that, following trial evidence, the records subject to the motion *in limine* may be justifiably admitted if the relevancy became evident later. *People v. Duff*, 374 Ill. App. 3d 599, 605 (2007); *Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32.

¶ 24 Defendant specifically references two pages from the medical records provided on appeal dated November 21, 2019, and December 11, 2021. Both dates are outside the timeframe that the court considered, nonetheless, we have reviewed them on appeal. Defendant fails to demonstrate how anything in the records would have caused an injury described as a "scratch[ ]" on Rasheed's face. See *Foutch*, 99 Ill. 2d at 392. Thus, the medical records presented, even outside the date, were irrelevant.

¶ 25 Additionally, while the court ruled that the records were irrelevant to defendant's case, the court did not limit counsel's cross-examination of Rasheed, where counsel asked several questions regarding Rasheed's diagnoses. Further, the court did not bar counsel from presenting expert witness testimony to address Rasheed's alleged ailments that defendant believed would explain the injury to Rasheed's face, though counsel chose not to do so. Absent evidence to the contrary, we conclude that the court did not abuse its discretion when it limited the *in camera* review and subsequently determined that the records reviewed *in camera* were not relevant to defendant's case.[3] See *Ramsey*, 239 Ill. 2d at 429. Where no error occurred, there is no plain error. See *People v. Harris*, 2020 IL App (3d) 160169, ¶ 39.

---

[3]Defendant contends that the medical records included in the common law records on appeal are only a portion of the medical records reviewed *in camera* by the court. Defendant attempts to excuse his ability to demonstrate the relevancy of the medical records and reasons that he has "no access" to the remaining records. Because it is defendant's burden on appeal to supply the record, we construe the omission of this evidence against defendant. *Foutch*, 99 Ill. 2d at 392.

10

¶ 26                                  III. CONCLUSION

¶ 27          The judgment of the circuit court of Du Page County is affirmed.

¶ 28          Affirmed.